## MARSHALL *v.* UNITED STATES

No. 72–5881.   Argued October 16–17, 1973—Decided January 9, 1974

BURGER, C. J., delivered the opinion of the Court, in which
STEWART, WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ.,

joined. MARSHALL, J., filed a dissenting opinion, in which DOUGLAS and BRENNAN, JJ., joined, *post,* p. 430.

*James F. Hewitt,* by appointment of the Court, 411 U. S. 914, argued the cause and filed a brief for petitioner.

*Jewel S. Lafontant* argued the cause for the United States. On the brief were *Solicitor General Bork, Assistant Attorney General Petersen, Deputy Solicitor General Lacovara, Harriet S. Shapiro, Jerome M. Feit,* and *Marshall Tamor Golding.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to consider petitioner's claim that the provisions of Title II of the Narcotic Addict Rehabilitation Act of 1966, 18 U. S. C. §§ 4251–4255, deny due process and equal protection by excluding from discretionary rehabilitative commitment, in lieu of penal incarceration, addicts with two or more prior felony convictions. The Circuits are in apparent conflict on this question. See the opinion of the Court of Appeals in this case, *sub nom. Marshall v. Parker,* 470 F. 2d 34 (CA9), and *Watson v. United States,* 141 U. S. App. D. C. 335, 439 F. 2d 442 (1970); *United States v. Hamilton,* 149 U. S. App. D. C. 295, 462 F. 2d 1190 (1972); *United States v. Bishop,* 469 F. 2d 1337 (CA1 1972); and *Macias v. United States,* 464 F. 2d 1292 (CA5 1972), cert. pending, No. 72–5539.

(1)

Petitioner, Robert Edward Marshall, pleaded guilty to an indictment charging him with entering a bank with intent to commit a felony, in violation of 18 U. S. C. § 2113 (a). At sentencing, petitioner requested that he be considered for treatment as a narcotic addict pursuant to Tit. II of the Narcotic Addict Rehabilitation Act of

1966 (NARA). The sentencing judge, after noting petitioner's prior felony convictions for burglary, forgery, and possession of a firearm, concluded that the exclusion of persons with two prior convictions from the discretionary provisions of the Act as set forth in 18 U. S. C. § 4251 (f)(4)[1] did not permit commitment under

[1] Title 18 U. S. C. § 4253 (a) provides in relevant part that:

"Following the examination provided for in section 4252, if the court determines that an eligible offender is an addict and is likely to be rehabilitated through treatment, it shall commit him to the custody of the Attorney General for treatment under this chapter . . . ."

Title 18 U. S. C. § 4251 (f) provides that:

"(f) 'Eligible offender' means any individual who is convicted of an offense against the United States, but does not include—

"(1) an offender who is convicted of a crime of violence.

"(2) an offender who is convicted of unlawfully importing or selling or conspiring to import or sell a narcotic drug, unless the court determines that such sale was for the primary purpose of enabling the offender to obtain a narcotic drug which he requires for his personal use because of his addiction to such drug.

"(3) an offender against whom there is pending a prior charge of a felony which has not been finally determined or who is on probation or whose sentence following conviction on such a charge, including any time on parole or mandatory release, has not been fully served: *Provided,* That an offender on probation, parole, or mandatory release shall be included if the authority authorized to require his return to custody consents to his commitment.

"(4) an offender who has been convicted of a felony on two or more prior occasions.

"(5) an offender who has been committed under title I of the Narcotic Addict Rehabilitation Act of 1966, under this chapter, under the District of Columbia Code, or under any State proceeding because of narcotic addiction on three or more occasions."

Title 18 U. S. C. § 4251 (d) defines "felony" for purposes of the Act to include

"any offense in violation of a law of the United States classified as a felony under section 1 of title 18 of the United States Code, and further includes any offense in violation of a law of any State,

NARA. Petitioner was sentenced to 10 years' imprisonment pursuant to 18 U. S. C. § 4208 (a)(2), but the District Judge recommended that petitioner receive treatment for narcotics addiction while incarcerated.[2]

Ten months after being sentenced, petitioner moved to vacate his sentence under 28 U. S. C. § 2255 on the ground that the two-prior-felony exclusion of NARA under § 4251 (f)(4) violates equal protection as embodied in the Due Process Clause of the Fifth Amendment.

The District Judge took note of *Watson* v. *United States, supra,* but declined to follow that holding. The District Judge also noted that there was no showing, as in *Watson, supra,* that petitioner's prior convictions and his drug addiction were related [3] and since his prior convictions did not relate to traffic in narcotics, the provisions

---

any possession or territory of the United States, the District of Columbia, the Canal Zone, or the Commonwealth of Puerto Rico, which at the time of the offense was classified as a felony by the law of the place where that offense was committed."

[2] Prisoners not eligible for treatment under NARA may receive the benefit of programs comparable to those provided under NARA, available to narcotics addicts under administrative processes of the Federal Bureau of Prisons. See generally Drug Abuse Programs Manual, Bureau of Prisons Policy Statement No. 8500.1 (Apr. 20, 1973).

[3] Because the two-prior-felony convictions in *Watson* were for violations of narcotics laws, there was some conjecture that the rationale of that case was limited to its facts. In *United States* v. *Hamilton,* 149 U. S. App. D. C. 295, 462 F. 2d 1190 (1972), the Court of Appeals for the District of Columbia Circuit, the same court which decided *Watson,* dispelled all doubt by holding the two-prior-felony exclusion to be unconstitutional where the defendant has been convicted of one prior narcotics law felony and four prior non-narcotics felony offenses. Subsequently, in *United States* v. *Bishop,* 469 F. 2d 1337 (1972), the Court of Appeals for the First Circuit also held the exclusion of § 4251 (f)(4) to be unconstitutional where the prior felonies were non-narcotics violations.

of 18 U. S. C. § 4251 (f) (2) did not apply. The District Judge determined that, given the purposes of the statute, Congress had not acted arbitrarily in providing different disposition standards for convicted persons with records of prior felony convictions from those without such convictions, these classifications being related to eligibility for rehabilitative commitment under NARA.

The Court of Appeals viewed petitioner's § 2255 petition as a motion under Rule 35 of the Federal Rules of Criminal Procedure for correction of an illegal sentence, and held the statutory classification constitutionally permissible, noting its disagreement with the decisions in *Watson, supra,* and *United States* v. *Hamilton, supra.* Viewing the Act in its entirety,[4] the Court of Appeals concluded that Congress expressly limited the reach of the Act to addicts most likely to be rehabilitated through treatment and provided an exclusion as to convicted persons having two or more prior convictions.

Concluding there is no "fundamental right" to rehabilitation from narcotics addiction at public expense after conviction of a crime, and there being no "suspect" classification under the statutory scheme, the Court of Appeals considered the correct standard to be whether the statu-

---

[4] In 1966, Congress enacted the Narcotic Addict Rehabilitation Act, Pub. L. 89–793, 80 Stat. 1438. Title I of the Act, 28 U. S. C. §§ 2901–2906, provides for civil rehabilitative commitment prior to trial of persons *charged* with federal crimes, and dismissal of the charges upon successful completion of the treatment. Title II, 18 U. S. C. §§ 4251–4255, provides for similar commitment in lieu of imprisonment for those *convicted* of a federal crime. Title III, 42 U. S. C. §§ 3411–3426, provides for civil commitment of persons not involved in the criminal process. In each case, the court must, after ordering commitment for examination, determine whether the individual is an addict, as defined by the statute, 28 U. S. C. § 2901 (a), 18 U. S. C. § 4251 (a), 42 U. S. C. § 3411 (a), and whether he "is likely to be rehabilitated through treatment," 28 U. S. C. § 2902 (b), 18 U. S. C. § 4253 (a), 42 U. S. C. § 3415.

tory classification bore "some relevance to the purpose for which the classification is made." *Baxstrom* v. *Herold,* 383 U. S. 107, 111 (1966); *Dandridge* v. *Williams,* 397 U. S. 471 (1970). The court reasoned that Congress adopted the challenged standards in an effort to restrict eligibility to those most likely to respond to treatment and held that Congress could not be said to have acted irrationally in so doing. The District Court's denial of petitioner's motion to vacate his sentence was affirmed, 470 F. 2d 34 (CA9 1972). We granted certiorari, 410 U. S. 954 (1973). We agree with the District Court's and the Court of Appeals' reading of the statute and affirm.

(2)

Petitioner concedes that the concept of equal protection as embodied in the Due Process Clause of the Fifth Amendment, see *Bolling* v. *Sharpe,* 347 U. S. 497 (1954), does not require that all persons be dealt with identically, but rather that there be some "rational basis" for the statutory distinctions made, *McGinnis* v. *Royster,* 410 U. S. 263, 270 (1973), or that they "have some relevance to the purpose for which the classification is made." *Baxstrom* v. *Herold, supra,* at 111; *Rinaldi* v. *Yeager,* 384 U. S. 305, 309 (1966). See also *James* v. *Strange,* 407 U. S. 128 (1972); *Humphrey* v. *Cady,* 405 U. S. 504 (1972). He argues that no such nexus exists under the classification provided by the challenged statute.

The broad purpose of Congress in enacting NARA, as set forth in the Act itself, was:

"[T]hat certain persons charged with or convicted of violating Federal criminal laws, who are determined to be addicted to narcotic drugs, and likely to be rehabilitated through treatment, should, in lieu of prosecution or sentencing, be civilly committed for confinement and treatment designed to

effect their restoration to health, and return to society as useful members." 42 U. S. C. § 3401.

See also H. R. Rep. No. 1486, 89th Cong., 2d Sess., 7 (1966), ("to provide for the treatment and rehabilitation of narcotic addicts when they are charged with or convicted of offenses against the United States"); S. Rep. No. 1667, 89th Cong., 2d Sess., 12 (1966). Congress recognized that some relationship between drug addiction and crime probably existed, and concluded that prosecution and imprisonment of all addicts, without more, would not cure addiction or retard the rising addiction rate, and that a rehabilitative rather than a purely penal aproach to the problem was called for. *Id.*, at 13, 17.

It was not the purpose of Congress, however, to make every addict eligible for civil commitment simply by reason of addiction. The congressional intent in adopting the statutory exclusion based on prior convictions which is challenged here is somewhat less explicitly defined,[5] but the objectives emerge clearly when the Act is read as a whole. Having recognized some nexus between drug addiction and crime, Congress specifically sought to insure that any program aimed at providing for the treatment of drug addiction would not hinder

---

[5] The Act was based on the House-passed Administration bill, H. R. 9167. The two-felony exclusion is derived from that bill, which contained all five of the final exclusions in some form. All of the other House bills considered by the House Committee, but one, also had a two-felony exclusion. See Civil Commitment and Treatment of Narcotic Addicts, Hearings on H. R. 9051, 9159, 9167 and Related Bills before Subcommittee No. 2 of the House Committee on the Judiciary, 89th Cong., 1st and 2d Sess., ser. 10, pp. 1–14, 17, 20–53 (1965 and 1966). The Senate bill, S. 2191, did not, however, contain the two-felony exclusion, see S. Rep. No. 1667, 89th Cong., 2d Sess., 7–8 (1966). In conference, where Titles I and II of the House bill were adopted, the two-felony exclusion was incorporated into the final bill. See H. R. Conf. Rep. No. 2316, 89th Cong., 2d Sess., 2–3, 6 (1966); 112 Cong. Rec. 27616 (1966).

traditional efforts to deal effectively with the strictly criminal aspects of the problem.[6] The most explicit statement of congressional intent is found in the House Report:

> "The practical effect of the implementation of the law provided for in the bill, is that strict punishment can be meted out where required to the hardened criminal, while justice can be tempered with judgment and fairness in those cases where it is to the best interest of society and the individual that such a course be followed.
>
> . . . . .
>
> "The definition of 'eligible individual' as set forth in the bill *insures* that the persons considered as candidates for civil commitment *will not include criminals* charged with violent crimes *or be those whose records disclose a history of serious crimes.*"[7] H. R. Rep. No. 1486, pp. 9–10. (Emphasis supplied.)

Similarly, the Senate Report notes:

> "The bill contains sufficient safeguards to assure adequate protection of the general public against the addict who is or may be a hardened criminal, while providing the flexibility necessary to enable

---

[6] "After carefully considering the proposed legislation, as amended, the committee finds that it offers a flexible and logical means to provide for the treatment of drug addicts *who are likely candidates for rehabilitation* without essentially changing the authority of law enforcement officials and the courts *to enforce full criminal actions* in appropriate cases." S. Rep. No. 1667, p. 37. (Emphasis supplied.)

[7] Though actually discussing the definition of "eligible individuals" contained in Title I, concerning civil commitment prior to trial, the identical definitions are contained in Title II, and the House Report indicates that there is no difference between the rationale or the language of the various provisions. See H. R. Rep. No. 1486, 89th Cong., 2d Sess., 12, 20 (1966).

Federal authorities to medically treat the addict who is capable of being cured and rehabilitated . . . ." S. Rep. No. 1667, p. 13.[8]

It is quite clear that in adopting the two-prior-felony exclusion, Congress sought first, to exclude from NARA treatment those less likely to be rehabilitated by such treatment, and second, to exclude those whose records disclosed a "history of serious crimes." The question we are called upon to decide is whether Congress could rationally have assumed that a person who has committed two or more prior felonies and is an addict at the time sentence is to be imposed is likely to be less susceptible of rehabilitation by reason of his past record, thus posing a greater threat to society upon release.

Congress' concern with susceptibility and suitability of multiple offenders to rehabilitative treatment can reasonably be said to derive from its belief that because of the nature of addiction treatment, one who had evidenced greater difficulty in conforming his behavior to societal rules and laws would himself be less likely to benefit from treatment. Additionally, such a person might also pose impediments to the successful treatment of others in the program. As testimony before both the House and

---

[8] Prior to inclusion of the two-prior-felony exclusion, the Senate Report described the purposes of the restrictions on eligibility by stating:

"The net effect is to confine eligibility for the benefits of the legislation to addicts accused of nonviolent crimes who show good prospects for rehabilitation, while retaining strict criminal punishment for dangerous or hardened offenders, narcotics pushers, and persons with a history of failure to respond to treatment." S. Rep. No. 1667, p. 17.

The bill which emerged from conference included the two-prior-felony exclusion, and the report on that bill merely noted that "the conferees for the Senate felt it reasonable to exclude hardened offenders with serious criminal records and persons who have demonstrated their unsuitability for civil treatment." 112 Cong. Rec. 27616 (1966).

Senate committees revealed, the treatment process for narcotics addiction is an arduous and a delicate undertaking, particularly in the aftercare stage when the subject is released into an unstructured environment which requires from the addict strict obedience to the limitations of the prescribed regime and full cooperation in the rehabilitative efforts.[9]

Additionally, there is no generally accepted medical view as to the efficacy of presently known therapeutic methods of treating addicts and the prospect for the successful rehabilitation of narcotics addicts thus remains shrouded in uncertainty. Indeed, even the premise that drug addiction is one of the significant root causes of crime is not without challenge. See generally D. Musto, The American Disease: Origins of Narcotic Control (1973). See also American Bar Association and American Medical Association, Joint Committee on Narcotic Drugs, Drug Addiction: Crime or Disease? (1961). As testimony before the Congress revealed, no evidence to date has demonstrated more than a speculative chance for the successful rehabilitation of narcotics addicts. H. R. Rep. No. 1486, at 51. S. Rep. No. 1667, at 14. The NARA program was therefore fundamentally experimental in nature. See 112 Cong. Rec. 11896–11901 (1966). The suggestion that there is "obscurity" in the holding of this Court in *Powell* v. *Texas*, 392 U. S. 514 (1968), fails to take into account that when courts deal with problems in the administration of criminal law such as those related to drug addiction, alcoholism,

---

[9] The Senate Report states:

"The process is extremely complex and difficult, involving sustained therapy, principally psychiatric, and perhaps a return to the community in stages, utilizing short visits, a halfway house, a work camp, or some similar facility. . . . In addition, some sanction should be available to enforce the cooperation of the addict in the post-hospitalization period." S. Rep. No. 1667, p. 15.

mental disease, and the like, they are necessarily confined to the existing limits of human knowledge in those areas. As MR. JUSTICE MARSHALL noted in *Powell:*

> "[T]he inescapable fact is that there is no agreement among members of the medical profession about what it means to say that 'alcoholism' is a 'disease.' One of the principal works in this field states that . . . 'alcoholism has too many definitions and disease has practically none.'" *Id.,* at 522.

The holding in *Powell* was a candid acknowledgment that the medical uncertainties afford little basis for judicial responses in absolute terms.

When Congress undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation, even assuming, *arguendo,* that judges with more direct exposure to the problem might make wiser choices. Accordingly, it would have been a permissible choice for Congress to permit discretionary inclusion in NARA programs of those whose prior offenses were determined to be addiction related or motivated. Such a discretion might appropriately have been vested in the trial judge much in the manner in which he is now required to exercise his discretion under § 4252 in determining whether the defendant is an addict who is likely to be rehabilitated through treatment.[10] That Congress has not yet chosen to so provide, however, does not render constitutionally impermissible its decision to limit treatment to those with less than two prior felony convictions. *Williamson* v. *Lee Optical Co.,* 348 U. S. 483 (1955); *Dandridge* v.

---

[10] Some criticism has been directed at the cautious use of the NARA program. See Report by the Comptroller General of the United States to the Congress, Limited Use of Federal Programs to Commit Narcotic Addicts for Treatment and Rehabilitation (1971).

*Williams,* 397 U. S. 471 (1970); *McGowan* v. *Maryland,* 366 U. S. 420 (1961); *Jefferson* v. *Hackney,* 406 U. S. 535 (1972).

It should be recognized that the classification selected by Congress is not one which is directed "against" any individual or category of persons, but rather it represents a policy choice in an experimental program made by that branch of Government vested with the power to make such choices. The Court has frequently noted that legislative classifications need not be perfect or ideal. The line drawn by Congress at two felonies, for example, might, with as much soundness, have been drawn instead at one, but this was for legislative, not judicial choice. *McGinnis* v. *Royster,* 410 U. S. 263 (1973); *Powell* v. *Texas, supra,* at 539–540 (Black, J., concurring). Against this background, it cannot be said that it was unreasonable or irrational for Congress to act on the predicate reflected in the legislative history and explicitly stated in the exclusion provision of § 4251 (f)(4), that a person with two or more prior felonies would be less likely to adjust and adhere to the disciplines and rigors of the treatment program [11] and hence is a less promising prospect for treatment than those with lesser criminal records.

In addition, Congress might rationally have sought to exclude from NARA treatment centers those it thought might be potentially disruptive elements within the sensitive environment of a drug treatment program.[12] Nor

---

[11] Similarly rational was the related congressional choice to give priority of treatment to convicted addicts at an early stage in their lives. Although not invariably so, those with no felony record may well be younger, as a group, than those with multiple convictions, and this notwithstanding that the median age of serious offenders has shown a steady downward trend.

[12] Virtually all drug treatment programs include group therapy and involve extensive personal interaction among those in the treat-

can Congress be said to have acted without reason in determining that an addict with multiple convictions was more "hardened" and thus a greater potential danger to society on early release than the addict who had committed one prior felony or none.

Under NARA, Congress provided for comparatively lenient sentencing possibilities,[13] but in excluding addicts with two prior felonies, it sought to assure that in an essentially experimental program to which limited resources were allocated these features would not be exploited by persons who were viewed by Congress as primarily antisocial and only secondarily addicts.[14] In addition, since the fact of two prior felony convictions may be said to evidence a lesser susceptibility of de-

---

ment program. In addition, there are strict institutional rules regarding virtually every aspect of the addict's daily existence which he is expected to follow, and the existence of such authority is considered vital to successful treatment, both in the program itself, and particularly during the aftercare period. See Cole, Report on the Treatment of Drug Addiction, Task Force Report: Narcotics and Drug Abuse, The President's Commission on Law Enforcement and Administration of Justice 135–147 (1967); Petersen, Yarvis & Farkas, The Federal Bureau of Prisons Treatment Program for Narcotics Addicts (1969); Federal Drug Abuse Programs, A Report Prepared by the Task Force on Federal Heroin Addiction Programs and Submitted to the Criminal Law Section of the American Bar Association and the Drug Abuse Counsel 241–278, 393–416 (1972); Vaillant & Rasor, The Role of Compulsory Supervision in the Treatment of Addiction, 30 Fed. Prob. 53–59 (June 1966).

[13] Under 18 U. S. C. § 4253, an individual who is determined to be eligible for NARA treatment is to be committed to the custody of the Attorney General for treatment for "an indeterminate period of time not to exceed ten years, but in no event shall it exceed the maximum sentence that could otherwise have been imposed." Title 18 U. S. C. § 4254 then allows for conditional release of an offender, upon the requisite determination, any time after the offender has received six months' treatment. Thereafter, he is legally on parole under the jurisdiction of the Board of Parole, 18 U. S. C. § 4255.

[14] See 112 Cong. Rec. 11813 (1966).

terrence, the reduced level of deterrence implicit in the benign policy of Title II could reasonably be thought by Congress to create an unacceptable risk to society and thus require the exclusion of such persons from NARA disposition.

We therefore hold that Title II of NARA, 18 U. S. C. §§ 4251–4255, does not constitute a denial of due process or equal protection by excluding from rehabilitative commitment, in lieu of penal incarceration, addicts with two or more prior felony convictions.

*Affirmed.*

MR. JUSTICE MARSHALL, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE BRENNAN concur, dissenting.

Title II of the Narcotic Addict Rehabilitation Act of 1966 authorizes treatment in lieu of prison sentence for those addicts convicted of an offense against the United States who the sentencing court has determined are "likely to be rehabilitated through treatment." 18 U. S. C. § 4253 (a). Petitioner was denied treatment for his disease of narcotics addiction, even though no determination was ever made that he is not likely to be rehabilitated through treatment, because the Act excludes from consideration for the NARA program any person with two or more prior felony convictions. 18 U. S. C. § 4251 (f)(4). Two courts of appeals have concluded that the two-felony exclusion, though intended by Congress to serve admittedly legitimate ends, is not a sufficiently rational means toward those ends to withstand scrutiny under equal protection principles.[1]

---

[1] See *Watson* v. *United States*, 141 U. S. App. D. C. 335, 439 F. 2d 442 (1970); *United States* v. *Hamilton*, 149 U. S. App. D. C. 295, 462 F. 2d 1190 (1972); *United States* v. *Bishop*, 469 F. 2d 1337 (CA1 1972). In addition to the statute's flaws noted in this opinion, these decisions also point out other anomalies implicit in the two-felony exclusion. Under the Act, an addict who has engaged in

The Court today, while alluding to some of the statute's serious flaws, nevertheless finds it constitutional. I must respectfully dissent.

In the present case the Court of Appeals analyzed the constitutionality of the two-felony exclusion by focusing on what it perceived to be this Court's two-tiered approach to equal protection issues. See 470 F. 2d 34, 38 (1972). Under this view, classifications involving a "fundamental interest" or "suspect classification" are subject to so-called "strict scrutiny," while all other statutes are tested by a standard of minimal rationality. While the Court today neither expressly endorses nor rejects this approach, its analysis is so deferential as to confirm an earlier observation that, except in cases where the Court chooses to invoke strict scrutiny, the Equal Protection Clause has been all but emasculated. See

trafficking to support his own habit would be eligible for non-criminal disposition under Tit. II, whereas a nontrafficking addict found, for the third time, in possession of narcotics for his own use would not. This result, "is curiously at odds with the Congressional preoccupation, underlying the Narcotic Addict Rehabilitation Act, with the distinction between traffickers and non-traffickers, and the reiterated purpose that 'strict punishment . . . be meted out where required to the hardened criminal, while justice . . . be tempered with judgment and fairness in those cases where it is to the best interest of society and the individual that such a course be followed.'" *Watson* v. *United States, supra,* at 349, 439 F. 2d, at 456. Other anomalies stem from the definition of "felony" in 18 U. S. C. § 4251 (d). "[T]wo persons who both had twice previously committed the identical crime of possession of marijuana might be treated differently under [the two-felony exclusion] simply because one committed his crime in Florida where possession over five grams is a felony and the other committed his in New York where it is only a misdemeanor . . . or because one committed both of his crimes before May 1, 1971, and the other committed them after that date, when the federal offense of marijuana possession was reduced to a misdemeanor for first offenders . . . ." *United States* v. *Bishop, supra,* at 1345.

432

*San Antonio School Dist.* v. *Rodriguez,* 411 U. S. 1, 98 (MARSHALL, J., dissenting).[2]

At the outset, then, I must once again take issue with the Court's apparently rigid approach to equal protection issues. See, *e. g., Dandridge* v. *Williams,* 397 U. S. 471, 519–530 (1970) (MARSHALL, J., dissenting); *Richardson* v. *Belcher,* 404 U. S. 78, 90–91 (1971) (MARSHALL, J., dissenting); *San Antonio School Dist.* v. *Rodriguez, supra,* at 98–110 (MARSHALL, J., dissenting). True, as the Court of Appeals found, this case does not fit into any neat "fundamental interest" or "suspect classification" mold. Notwithstanding, I find it hard to understand why a statute which sends a man to prison and deprives him of the opportunity even to be considered for treatment for his disease of narcotics addiction,[3] while

---

[2] Cf. Gunther, The Supreme Court 1971 Term, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv. L. Rev. 1, 8 (1972).

[3] Drug addiction is specifically referred to as a "disease" in the Senate Report recommending enactment of Pub. L. No. 92–420, 86 Stat. 677, which expanded the NARA program to include methadone maintenance. See S. Rep. No. 92–1071, p. 3 (1972). The most widely accepted and authoritative definition of heroin addiction is one promulgated by the World Health Organization, which lists its characteristics as:

"(1) an overpowering desire or need to continue taking the drug and to obtain it by any means; the need can be satisfied by the drug taken initially or by another with morphine-like properties;

"(2) a tendency to increase the dose owing to the development of tolerance;

"(3) a psychic dependence on the effects of the drug related to a subjective and individual appreciation of those effects; and

"(4) a physical dependence on the effects of the drug requiring its presence for maintenance of homeostasis and resulting in a definite, characteristic, and self-limited abstinence syndrome when the drug is withdrawn." *United States* v. *Moore,* 158 U. S. App. D. C. 375, 465–466, 486 F. 2d 1139, 1229–1230 (1973) (Wright, J., dissenting), quoting World Health Organization Expert Committee on

providing treatment and suspension of prison sentence to others similarly situated, should be tested under the same minimal standards of rationality that we apply to statutes regulating who can sell eyeglasses or who can own pharmacies. See *Williamson* v. *Lee Optical Co.,* 348 U. S. 483 (1955); *North Dakota State Bd. of Pharmacy* v. *Snyder's Drug Stores, Inc., ante,* p. 156. This case does not involve discrimination against business interests more than powerful enough to protect themselves in the legislative halls, but the very life and health of a man caught up in the spiraling web of addiction and crime.

I press my disagreement no further here, for a careful analysis of the two-felony exclusion and the ends Congress sought to achieve shows that the exclusion is a totally irrational means toward those ends. If deferential scrutiny under the equal protection guarantee is to mean more than total deference and no scrutiny, surely it must reach the statutory exclusion involved in this case.

One of Congress' primary purposes in enacting the two-felony exclusion was to limit treatment to those convicted persons considered most deserving of the special benefits provided by the new law. As the Government argues in its brief, Congress wanted to grant the benefits of treatment to those who "were primarily addicts, and only secondarily criminals." Brief for United States 6. To state the goal more precisely, Congress intended to give treatment to those addicts whose criminal activity was only a symptom or product of their addiction. The

Addiction-Producing Drugs, Thirteenth Report, World Health Organization Technical Report Series No. 273, p. 13 (1964).
Congress has similarly defined an "addict" to include one "who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction." 21 U. S. C. § 802 (1).

House Report recognized that "Narcotic addicts in their desperation to obtain drugs often turn to crime in order to obtain money to feed their addiction." H. R. Rep. No. 1486, 89th Cong., 2d Sess., 8 (1966). On the other hand, Congress knew there were others who were first of all criminals, and only secondarily addicts—that is, persons whose criminal activity was independent of their narcotics addiction. It was thought important to pre-serve strict criminal penalties for such hardened crimi-nals, rather than permit them to use the fact of their addiction to escape punishment for a crime. See 112 Cong. Rec. 11813 (1966).

The plain fact of the matter, however, is that the two-felony exclusion does not further this legislative end, as the following examples demonstrate. Defendant A, with a prior felony conviction for assault with intent to commit murder, is convicted of stealing funds from a national bank. Neither crime was in any way related to narcotics addiction. In fact, A was not even an addict at the time he committed the crimes, but has become an addict during the pendency of his bank theft trial. De-fendant B, who has two prior felony convictions for nar-cotics offenses, is convicted of possession of heroin for his own use. Given the above-stated legislative purpose, one would think that Defendant B, all of whose criminal activity was related to his narcotics addiction, would be eligible for NARA treatment, while Defendant A, none of whose criminal activity was so related, would not be eligible. But just the opposite is true, because of the two-felony exclusion.[4]

---

[4] Defendant A would not be excluded from the program under the statutory exclusion of "an offender who is convicted of a crime of violence," 18 U. S. C. § 4251 (f) (1), since that exclusion applies only to a person convicted of a crime of violence in the same proceeding in which Tit. II is considered as an alternative to prison sentence. Thus, if one has just been convicted of a "crime

The problem with the statute is not, as the majority would have it, that Congress chose two felonies as the cutoff point rather than one or three. Rather, the statute fails to achieve the legislative end of discriminating between people who are mainly addicts and those who are mainly criminals because a numerical test was used to achieve a qualitative result for which it was totally unsuited.

A second basic purpose sought to be achieved through the two-felony exclusion was to restrict NARA treatment to those persons deemed likely to be rehabilitated. But the two-felony rule, again, is not a rational means toward that end. To begin with, it must be remembered that the statute itself limits participation in the program to those persons who, after an examination in the custody of the Attorney General, are determined to be addicts "likely to be rehabilitated through treatment." The two-felony exclusion, to the extent it is justified by reference to this policy, amounts to a conclusive and irrebuttable presumption that a person with two or more felony convictions is not likely to be rehabilitated through treatment. We have only recently reiterated that "permanent irrebuttable presumptions have long been disfavored," see *Vlandis* v. *Kline,* 412 U. S. 441, 446 (1973). This is particularly true where an interest as important as personal liberty is at stake. And as one would expect of medical problems in general, whether a particular individual's disease of narcotics addiction is amenable to treatment is the very kind of question which requires an individualized determination.[5]

of violence" as defined in § 4251 (b), one is disqualified from the program under § 4251 (f) (1), while if one had previously been so convicted but is now convicted of a nonviolent crime, one would be eligible. See *United States* v. *Bishop,* 469 F. 2d, at 1344.

[5] Congressman Celler remarked: "Each individual case must be scrutinized to determine whether civil commitment will be efficacious. I submit that it should not be the Congress who, at long distance,

The two-felony presumption of nonamenability to rehabilitation is also plainly contrary to fact. The Administrator of the California Youth and Adult Corrections Agency pointed out that the two-or-more-felony provision "would result in a great many persons being excluded who might prove to be the best subjects for the program." [6] As he indicated, it was the experience of the California program,[7] upon which the federal program was modeled in large part, that "persons who have had as many as four or five previous convictions and have grown older in years respond to the program better than some of the younger persons earlier in their careers." [8] Nor was any contrary evidence presented to Congress.

Another purpose of the two-felony exclusion was to weed out those violent, antisocial individuals whose

---

makes such determinations. In the absence of the facts of individual cases, these decisions can only be arbitrary." See Civil Commitment and Treatment of Narcotic Addicts, Hearings on H. R. 9051, 9159, 9167, and Related Bills before Subcommittee No. 2 of the House Committee on the Judiciary, 89th Cong., 1st and 2d Sess., ser. 10, p. 55 (1965 and 1966).

[6] The Narcotic Addict Rehabilitation Act of 1966, Hearings before a Special Subcommittee of the Senate Committee on the Judiciary, 89th Cong., 2d Sess., 91 (1966).

[7] See Cal. Welf. & Inst. Code §§ 3050–3054, 3104–3107, and 3109 (1972). The California statute has no exclusion similar to the two-felony exclusion. It is also interesting to note that while the California Act, like the federal Act, excludes persons convicted of certain crimes of violence, see *id.*, § 3052, the statute also provides that even in the case of an offender convicted of a crime of violence, "the judge may request the district attorney to investigate the facts relevant to the advisability of commitment pursuant to this section. In unusual cases, wherein the interest of justice would best be served, the judge may, with the concurrence of the district attorney and defendant, order commitment notwithstanding" the crime-of-violence exclusion. *Id.*, § 3051.

[8] Hearings, *supra*, n. 5, at 153.

participation in the program would interfere with the rehabilitation of others. But again, Congress has drawn a numerical test to achieve a qualitative result for which it is manifestly unsuited. An addict with a prior conviction for attempted murder can participate in the NARA program, while one whose prior record includes two convictions for possession of narcotic drugs cannot.[9]

It makes no sense to deem an addict a "hardened criminal" unworthy or unsuited for treatment simply because he has engaged in criminal activity which may have been the symptom or product of his addiction. Congress enacted NARA because it knew that almost all addicts are hardened criminals in this sense. Not only are they driven to rob and steal in order to obtain money to sustain their habits, but their habits themselves involve the commission of felonies every day of their lives. As the House Report stated, the purpose of the bill was "to treat the unfortunate addict who is capable of rehabilitation to render assistance in a manner which will enable him to extricate himself from an otherwise hopeless and repetitious pattern of addiction and crime."[10] To deny treatment to those addicts who have been convicted of a certain number of felonies, without regard to the relationship between their addiction and the prior offenses, is, in the

---

[9] The statute's disregard of all time limits is further evidence of its arbitrary nature. "All prior felonies are counted—whether a joy-ride by a peer-imitating teenager or a rape committed by a 35-year old sex deviate during the pendency of the proceedings in which sentence is about to be imposed. Any intervening period between felonies of good behavior or attempts at rehabilitation are ignored; a person is thought to harden as a criminal merely because he accumulates a fixed number of judgments, regardless of changes in his personality or personal circumstances over time." *United States* v. *Bishop, supra,* at 1345.

[10] H. R. Rep. No. 1486, 89th Cong., 2d Sess., 5 (1966).

apt words of Congressman Ryan, like "building a sanatorium to treat tuberculosis, and then refusing admittance to patients with a contagious disease." 112 Cong. Rec. 11812 (1966).[11]

It is argued that the NARA program is essentially experimental in nature, and that courts should therefore be particularly reluctant to interfere with legislative decisions. But this observation must be tempered by a realization that we are experimenting here with people's lives and health. And it can hardly be said that a program now in its seventh year of operation is still basically experimental. Only last year, Congress broadened the NARA program to include methadone maintenance as part of the available rehabilitative treatment, recognizing the many cases of addiction which, though

---

[11] The majority's contention, see *ante,* at 420 n. 2, that prisoners not eligible for the NARA program are not actually denied treatment because they may receive the benefits of similar programs within the Federal Bureau of Prisons is simply contrary to fact. As the Government itself indicates in its brief, treatment begins immediately upon commitment under NARA, and the offender is eligible for conditional release on parole after six months of treatment. Brief for United States 2 n. 1. Addicts not committed under NARA, however, are not placed in any rehabilitation program until about one year before their anticipated release. *Ibid.* Thus, an addict like petitioner, who received a 10-year sentence, will have to go many years without treatment for his disease because of his exclusion from the NARA program.

More importantly, we are told that the Bureau of Prisons does not have sufficient facilities for treatment of the approximately 5,000 federal prisoners estimated to suffer from some degree of drug dependency. In the Government's own words: "Thus, although commitment under NARA assures treatment, a judicial recommendation for similar treatment at the time an ordinary criminal sentence is imposed does not." *Id.,* at 3 n. 1. Indeed, there is no indication in the record in this case that petitioner has yet received any treatment for his addiction, notwithstanding the sentencing court's recommendation of treatment.

not totally curable, can be maintained in a manner which fosters the individual's social rehabilitation and permits him to become a productive member of society. See Pub. L. No. 92–420, 86 Stat. 677; S. Rep. No. 92–1071 (1972). With the program widened in this fashion, it seems even more irrational to exclude those who might well benefit from the expanded program through the operation of broad and arbitrary exclusions that do not reasonably further any legitimate congressional purposes.

Finally, we must be mindful that the growing concern with treatment of narcotics addicts has not arisen in a legal vacuum, but has paralleled a growing awareness of the Eighth Amendment questions raised when criminal punishment is imposed for activities which are the symptom or direct product of the disease of narcotics addiction.[12] The Court today, by dicta implying that Congress may, consistent with the equal protection concept, deny NARA benefits to persons convicted of narcotics-related offenses because of two prior convictions

[12] In *Watson* v. *United States,* 141 U. S. App. D. C. 335, 439 F. 2d 442 (1970), it was argued that criminal punishment of an addict for possession of narcotics solely for his own use was impermissible under the Eighth Amendment, but the question was left undecided because not clearly raised before the trial court. See *id.,* at 346, 439 F. 2d, at 453. Plenary consideration of the Eighth Amendment problems of convicting addicts for addiction-related offenses came in *United States* v. *Moore,* 158 U. S. App. D. C. 375, 486 F. 2d 1139 (en banc), cert. denied, *post,* p. 980. Although the defense of addiction was rejected by a 5–4 decision, it now appears that for two members of the majority, the rejection of the Eighth Amendment defense "rested on the availability to the defendant-addict of treatment through NARA." See *United States* v. *Harrison,* 158 U. S. App. D. C. 229, 231, 485 F. 2d 1008, 1010 (1973).

This Court has previously dealt with related issues in *Robinson* v. *California,* 370 U. S. 660 (1962), and *Powell* v. *Texas,* 392 U. S. 514 (1968).

for narcotics-related offenses,[13] only exacerbates these Eighth Amendment problems.

Mr. Justice Jackson, himself a strong opponent of substantive due process, once argued that the vitality of the Equal Protection Clause as a ground for constitutional adjudication is that it "does not disable any governmental body from dealing with the subject at hand." Rather, it merely sends the legislature back to the drawing board to draft a statute which more precisely and more evenhandedly solves the problem. See *Railway Express* v. *New York,* 336 U. S. 106, 112 (1949) (concurring opinion). I would not deny Congress the right to limit the NARA program to persons whose criminal activity was a product of their addiction, to those who were likely to be rehabilitated, or to those whose presence in a treatment center would not interfere with the rehabilitation of others. But I would have Congress make a second attempt at drafting a statute which actually furthers these ends.

---

[13] As the majority opinion indicates, petitioner had three prior felony convictions for burglary, forgery, and possession of a firearm, respectively, and there was no attempt to show that his prior convictions related to traffic in narcotics. In addition, there does not appear to have been any showing that petitioner's present conviction for entering a bank with intent to commit a felony was narcotic related. Accordingly, the majority's remarks with respect to Congress' power to exclude from the NARA program persons whose prior and present offenses are addiction related or motivated purport to resolve questions not before us in this case. See *ante,* at 427–428.