STATE OF NEW JERSEY, PLAINTIFF, v.
WILLIAM KOWITSKI, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)

Decided October 12, 1976.

238

*Mr. Herbert Barnes* for defendant.

*Mr. Craig L. Barto,* Assistant Prosecutor, for the State (*Mr. Stephen R. Champi,* Prosecutor of Somerset County, attorney).

MEREDITH, J. S. C. The New Jersey Supreme Court, by *R.* 3:28, has authorized the establishment of Pretrial Intervention Programs (PTI) in those counties whose programs receive the approval of the Supreme Court. Currently 12 of New Jersey's 21 counties have such a program in operation. Although Somerset County does not have PTI, adjacent Morris, Mercer, Union and Middlesex Counties do.

Defendant William Kowitski, a 21-year-old male, was arrested on March 4, 1976. Kowitski, who lives a short distance from Middlesex County, applied to Middlesex PTI for admission into their program. His application was denied on the grounds that the crime was not committed in Middlesex County. He then moved before this court for an order directing that his application be accepted by Middlesex PTI or, in the alternative, that his case be removed from the trial list until Somerset County has established a PTI program. The basis of the motion was that to deny him the opportunity to apply for PTI, a right granted to defendants in 12 other counties, *State v. Leonardis,* 71 *N. J.* 85 (1976), would be a denial of the equal protection of the laws. For the reasons expressed below, this court agrees and hereby directs the establishment of a PTI program for Somerset County and the removal of this case from the trial list until such a program is established.[1]

---

[1]Once this decision is announced it is expected that defense attorneys will file similar motions seeking to postpone their trials until a PTI program is established. This court will neither grant an adjournment in every instance, nor will it deny all adjournment motions. Granting wholesale adjournments would unnecessarily create a tremendous backlog of criminal cases. A denial of all motions would force all defendants, including those who may later be accepted into PTI, to face the "time-consuming and often debilitating rigors of the criminal process." *State v. Leonardis,* 71 *N. J.* 85, 90 (1976). Rather, this court will hold a hearing, in open court, to determine on an individual basis the likelihood of future eligibility for PTI. Defense counsel will supply this court and the prosecutor's office with both a notice of motion to adjourn and an affidavit, preferably from the defendant, in support of the motion. The prosecutor, of course, will be afforded an opportunity at the hearing to

 The right to equal protection of the laws is guaranteed by both the Federal and State Constitutions, *U. S. Const.* Amend. XIV; *N. J. Const.* (1947), Art. I, par. 1. See *Washington Nat'l Ins. Co. v. Bd. of Review,* 1 *N. J.* 545 (1949). The standard tests for determining whether there is an equal protection violation have been oft repeated. The court looks to the character of the classification in question the individual interest affected and the governmental interests in support of the classification. *Dunn v. Blumstein,* 405 *U. S.* 330, 92 *S. Ct.* 995, 31 *L. Ed.* 2d 274 (1972). There must be some rational basis for the distinctions. *Marshall v. United States,* 414 *U. S.* 417, 422, 94 *S. Ct.* 700, 704, 38 *L. Ed.* 2d 618, 623 (1974); *Rinaldi v. Yeager,* 384 *U. S.* 305, 308, 86 *S. Ct.* 1497, 1499, 16 *L. Ed.* 2d 577, 579 (1966), and the reason must be related to a legitimate governmental interest. *United States Dept. of Agric. v. Moreno,* 413 *U. S.* 528, 533, 93 *S. Ct.* 2821, 2825, 37 *L. Ed.* 782, 787 (1973). Where fundamental rights are involved, or a suspect classification made, a compelling state interest is needed to

present his reasons why the particular defendant should not be deemed eligible for PTI. It will be defendant's burden to convince this court that there is a likelihood that he will ultimately be accepted for PTI. Those defendants who are unable to meet this burden will have their case placed on the trial list.

In reaching its determination, this court will be guided by the applicable criteria set out in the Supreme Court's Guidelines published in the *New Jersey Law Journal* of September 30, 1976, 99 *N. J. L. J.* 865 (1976), and in *State v. Leonardis, supra.* More specifically, this court will consider defendant's age, his residence, the type of offense charged, his prior criminal record, his employment record and any other factors relevant to defendant's amenability for rehabilitation. The Supreme Court has emphasized that these criteria are to be evaluated in light of the short-term, 3–6 months, supervisory period of PTI.

Furthermore, in any instance where the court grants an adjournment, this is not a directive to the Probation Department to admit defendant when the PTI program is ultimately established. Nor is a denial of defendant's motion a bar to his possible subsequent admission to PTI. In addition, should defendant's motion for an adjournment be granted, defendant will be deemed to have waived his right to a speedy trial for any delay arising out of this adjournment.

satisfy the court's strict scrutiny. *Memorial Hospital v. Maricopa Cty.,* 415 *U. S.* 250, 256, 94 *S. Ct.* 1076, 1081, 39 *L. Ed.* 2d 306, 313 (1974). When, however, these factors are not present mere rationality, at least for purposes of the Federal Constitution, will suffice and the classification will be upheld. See *Southern Burlington Cty. NAACP v. Mt. Laurel Tp.,* 67 *N. J.* 151, 175 (1975), app. dism., 423 *U. S.* 803, 96 *S. Ct.* 18, 46 *L. Ed.* 2d 28 (1975); *Collingswood v. Ringgold,* 66 *N. J.* 350, 370 (1975), app. dism., 426 *U. S.* 901, 96 *S. Ct.* 2220, 48 *L. Ed.* 2d 826 (1976); *Robinson v. Cahill,* 62 *N. J.* 473, 491 (1973), *cert.* den. 414 *U. S.* 976, 94 *S. Ct.* 292, 38 *L. Ed.* 2d 219 (1973).

[4–6] Although pretrial intervention as presently constituted involves no suspect classification, it cannot be said for state equal protection purposes that no important rights are involved. The mere fact that there is no inherent substantive right to pretrial intervention does not withdraw it from the ambit of equal protection scrutiny. The role of equal protection in our judicial system is not to create new substantive rights, *San Antonio Independent School Dist. v. Rodriguez,* 411 *U. S.* 1, 33, 93 *S. Ct.* 1278, 1297, 36 *L. Ed.* 2d 16, 42 (1973), but to ensure that those individuals situated similarly are treated similarly by the State. PTI is an entitlement to those eligible individuals and cannot be arbitrarily withdrawn. *Goldberg v. Kelly,* 397 *U. S.* 254, 262, 90 *S. Ct.* 1011, 1017, 25 *L. Ed.* 2d 287, 295 (1970); *State v. Leonardis,* 71 *N. J.* 85, 116 (1976).

The history behind the development of PTI and its goals for the improvement of criminal justice were amply detailed in the *Leonardis* opinion and need only be summarized here. PTI is a recognition that criminal defendants and society as a whole are not served by forcing all accused individuals to face criminal prosecution and subsequent criminal stigmatization. In fact, denominating certain individuals as "criminals" can hinder rehabilitation by foreclosing future employment opportunities. Thus New Jersey's PTI operates before trial, allowing those individuals who successfully com-

plete the program to avoid any adjudication of guilt. Diversion serves both the eligible individual and society and the decision to allow program participation becomes one of great importance. *State v. Leonardis, supra,* 71 *N. J.* at 117.

Presently, in New Jersey, eligibility to apply for PTI does not depend on the nature of the crime, defendant's past criminal record, *State v. Leonardis, supra* at 111–113, or defendant's residence, *State v. Nolfi,* 141 *N. J. Super.* 528 (Law Div. 1976), but rather on the location of the crime. Geography is therefore the dividing line between the class of eligible defendants and those not eligible. Although recognizing that PTI is an experimental program designed to alleviate presently existing defects in the criminal justice system and thus entitled to wide judicial deference, *McGinnis v. Royster,* 410 *U. S.* 263, 270, 93 *S. Ct.* 1055, 1059, 35 *L. Ed.* 2d 282, 288 (1973), this court cannot conceive of a rational articulable justification for determining PTI eligibility for defendants accused of committing state crimes on the basis of where within New Jersey the crime was committed. An individual is no less amenable to rehabilitation, the dominant purpose behind PTI, because the situs of the crime was in Somerset County rather than Middlesex. Geographical distinction has no basis in practical experience and is wholly unrelated to the rehabilitative objectives of the PTI program, *United States Dept. of Agric. v. Moreno,* 413 *U. S.* 528, 533, 93 *S. Ct.* 2821, 2825, 37 *L. Ed.* 2d 782, 787 (1973) ; *Schilb v. Kuebel,* 404 *U. S.* 357, 364–365, 92 *S. Ct.* 479, 484, 30 *L. Ed.* 2d 502, 510–511 (1971).

In reaching this determination, the court is not unmindful of *Marshall v. United States,* 414 *U. S.* 417, 94 *S. Ct.* 700, 38 *L. Ed.* 2d 618 (1974), and *McGinnis v. Royster,* 410 *U. S.* 263, 93 *S. Ct.* 1055, 35 *L. Ed.* 2d 282 (1973), but finds them distinguishable. In *Marshall* the U. S. Supreme Court upheld against an equal protection attack Title II of the Narcotic Rehabilitation Act, 18 *U. S. C. A.* §4251 (1970). The statute limited civil commitment for treatment purposes to narcotic addicts who did not have more than one

prior felony conviction. The statutory aim was to reduce drug related crime by attempting to rehabilitate the addict by treating him outside the penal system. At the same time Congress wanted to ensure that the hardened criminal received an appropriate punishment. The court held that Congress could rationally conclude that persons with multiple felony convictions would not be amenable to treatment. The court noted the experimental nature of the program and stated that where Congress acts in an area "fraught with medical and scientific uncertainties," broad legislative options must be permitted. *Marshall v. United States, supra,* 414 *U. S.* at 426–427, 94 *S. Ct.* at 706, 38 *L. Ed.* 2d at 625–626. A court is not to "inhibit state experimental classifications in a practical and troublesome area * * * [so long as] * * * the challenged distinction rationally furthers some legitimate, articulated state purpose." *McGinnis v. Royster, supra,* 410 *U. S.* at 270, 93 *S. Ct.* at 1059, 35 *L. Ed.* 2d at 288 (1973).

PTI is most assuredly an innovative experimental program. Attendant deficiencies do not automatically rise to the level of a constitutional violation. Yet, in this instance, the deficiency is not the result of a genuine uncertainty over which individuals are the best candidates for rehabilitation, but a wholly arbitrary classification which is "clearly unrelated to the stated purpose of the Act." *United States Dept. of Agric. v. Moreno, supra,* 413 *U. S. at* 533, 93 *S. Ct.* at 2825, 37 *L. Ed.* 2d at 787. See *State v. Smith,* 58 *N. J.* 202, 207 (1971).

One final contention remains. In *Robinson v. Cahill,* 62 *N. J.* 473 (1973), *cert.* den. 414 *U. S.* 976, 94 *S. Ct.* 292, 38 *L. Ed.* 2d 219 (1973), our Supreme Court, in addressing the effect of the Equal Protection Clause on local home rule, noted that discrepancies in the level of municipal services can and do exist. *Id.* at 482–83, 498. See *San Antonio Independent School Dist. v. Rodriguez,* 411 *U. S.* 1, 37, 93 *S. Ct.* 1278, 1299, 36 *L. Ed.* 2d 16, 45 (1973); *West Morris Re-*

gional Bd. of Educ. v. Sills, 58 N. J. 464, 477 (1971), cert. den. 404 U. S. 986, 92 S. Ct. 450, 30 L. Ed. 2d 370 (1971).

PTI, it can be argued, is merely another service provided by the locality, with no requirement that other localities institute similar programs. Although appealing, the argument on close examination lacks merit. An initial requirement is that the subject matter be appropriate for local option. Robinson v. Cahill, supra 62 N. J. at 498; West Morris Regional Bd. of Educ. v. Sills, 58 N. J. at 477; Jamouneau v. Harner, 16 N. J. 500, 520 (1954), cert. den. 349 U. S. 904, 75 S. Ct. 580, 99 L. Ed. 1241 (1955). Education, the subject matter before the court in Robinson, has traditionally been viewed as a matter amenable to local control. Robinson v. Cahill, supra, 62 N. J. at 493; West Morris Regional Bd. of Educ. v. Sills, supra, 58 N. J. at 477.

In another instance a state statute authorizing local option in passing rent control ordinances was upheld by Jamouneau v. Harner, 16 N. J. 500 (1954), cert. den. 349 U. S. 904, 75 S. Ct. 580, 99 L Ed. 1241 (1955). There the Legislature made an express finding that a housing shortage constituted a serious public emergency in certain areas of the state. Id. at 516. The court upheld the local option as it was a rational way to legislate only for those areas where the need existed and "thus to avoid statewide control in excess of the need." Id. at 517. Finally, in Two Guys from Harrison, Inc. v. Furman, 32 N. J. 199 (1960), a statute allowing local option for Sunday blue laws was sustained on the theory that the Legislature could have determined that local differences as to the quantum and nature of the business activity within the municipality predominated. Id. at 231.

One important factor distinguishes the above cases from the present situation. The courts, in those cases were able to link up the subject matter to the need for local option. The localities were not arbitrarily selected. Jamouneau v. Harner, supra, 16 N. J. at 521. No such nexus is possible here. As stated earlier, there is no correlation between rehabilitation and the locality of the criminal offense. Defend-

ant has violated a state-wide statute, not a local ordinance. The problem of rehabilitation and crime control is state-wide and not the province of only selected counties. State-wide problems demand a state-wide solution. See *Adler v. Deegan,* 251 *N. Y.* 467, 489, 167 *N. E.* 705, 713 (Ct. App. 1929) (Cardozo, J., concurring). "[W]ithin a state-administered system, such discrepancies may no longer be tolerated, absent a rational basis for such distinctions." *State v. Leonardis, supra,* 71 *N. J.* at 120.

In reaching this conclusion that New Jersey's PTI program as currently set up is in violation of the Equal Protection Clause of both the Federal and State Constitutions, this court is mindful of our Supreme Court's admonition that the Equal Protection Clause is not to be used to "supply categorical answers in the vast area of human needs." *Robinson v. Cahill, supra,* 62 *N. J.* at 492. At the same time, it is incumbent upon the court to apply the constitution as written and ensure the equal protection of the laws to all. Irrational or arbitrary distinctions have no place in our system of justice, for where conspicuously artificial lines are drawn and the law "lays an unequal hand on those who have committed intrinsically the same quality of offense * * * it has made as invidious a discrimination as if it has selected a particular race or nationality for oppressive treatment." *Skinner v. Oklahoma,* 316 *U. S.* 535, 541, 62 *S. Ct.* 1110, 1113, 86 *L. Ed.* 1655, 1660 (1942). See *State v. Nolfi,* 141 *N. J. Super.* 528, 536 (Law Div. 1976). The purpose behind the concept of equal protection is the requirement that there be "uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." *Reynolds v. Sims,* 377 *U. S.* 533, 565, 84 *S. Ct.* 1362, 1383, 12 *L. Ed.* 2d 506, 529 (1964). See *F. S. Royster Guano Co. v. Virginia,* 253 *U. S.* 412, 40 *S. Ct.* 560, 64 *L. Ed.* 989 (1920); *Washington Nat'l Ins. Co. v. Bd. of Review,* 1 *N. J.* 545, 553 (1949). Since the classification of *R.* 3:28 fails to meet this standard and is wholly irrational, the classification must fall. The Somerset County Probation Department is

therefore ordered to establish a PTI program and submit it to the New Jersey Supreme Court for approval.

The court is fully aware of the impact of today's decision on the practical problems concerning the present criminal trial calendar and the immediate implementation of a PTI program where none exists. Nevertheless, when practical problems interfere with constitutional rights, the. Constitution must prevail.