# SUPREME COURT OF THE UNITED STATES

_____

### No. 21A8

_____

## PANTELIS CHRYSAFIS, ET AL. *v.* LAWRENCE K. MARKS

### ON APPLICATION FOR INJUNCTIVE RELIEF

### [August 12, 2021]

The application for injunctive relief presented to JUSTICE SOTOMAYOR and by her referred to the Court is granted pending disposition of the appeal in the United States Court of Appeals for the Second Circuit and disposition of the petition for a writ of certiorari, if such writ is timely sought. Should the petition for a writ of certiorari be denied, this order shall terminate automatically. In the event the petition for a writ of certiorari is granted, the order shall terminate upon the sending down of the judgment of this Court.

This order enjoins the enforcement of only Part A of the COVID Emergency Eviction and Foreclosure Prevention Act (CEEFPA). 2020 N. Y. Laws ch. 381. That is the only relief applicants seek. See Case No. 2:21-cv-02516, ECF No. 1 at 9; Emergency Application for Writ of Injunction 7, 40. If a tenant self-certifies financial hardship, Part A of CEEFPA generally precludes a landlord from contesting that certification and denies the landlord a hearing. This scheme violates the Court's longstanding teaching that ordinarily "no man can be a judge in his own case" consistent with the Due Process Clause. *In re Murchison*, 349 U. S. 133, 136 (1955); see *United States* v. *James Daniel Good Real Property*, 510 U. S. 43, 53 (1993) (due process generally requires a hearing).

This order does not enjoin the enforcement of the Tenant Safe Harbor Act (TSHA), which applicants do not challenge.

2020 N. Y. Laws ch. 127, §§1, 2(2)(a). Among other things, TSHA instructs New York courts to entertain a COVID-related hardship defense in eviction proceedings, assessing a tenant's income prior to COVID, income during COVID, liquid assets, and ability to obtain government assistance. §2(2)(b). If the court finds the tenant "has suffered a financial hardship" during a statutorily-prescribed period, then it "shall [not] issue a warrant of eviction or judgment of possession." §2(1).

JUSTICE BREYER, with whom JUSTICE SOTOMAYOR and JUSTICE KAGAN join, dissenting from grant of application for injunctive relief.

The New York Legislature has passed two laws regulating evictions during the COVID–19 pandemic. The first is the Tenant Safe Harbor Act, which provides tenants who have "suffered a financial hardship during the COVID–19 covered period" with a defense in eviction proceedings. 2020 N. Y. Laws ch. 127, §2.2.(a) (McKinney). The second is the COVID–19 Emergency Eviction and Foreclosure Prevention Act of 2020 (CEEFPA). CEEFPA simplifies the process for tenants to invoke financial hardship during the pandemic as a defense to eviction. Tenants who wish to assert the defense must provide a sworn attestation stating that they are experiencing financial hardship or health impacts as a result of the pandemic. 2020 N. Y. Laws ch. 381, pt. A, §4. The attestation pauses eviction proceedings until the time that CEEFPA expires, namely the end of August 2021. §§2, 4, 6, 8; 2021 N. Y. Laws ch. 104 (establishing CEEFPA's August 31, 2021, expiration date). Pending eviction proceedings are stayed, new eviction proceedings cannot be filed, and outstanding eviction warrants cannot be executed until that date. 2020 N. Y. Laws ch. 381, pt. A, §§2, 4, 6, 8. Eviction proceedings may resume after August 31, 2021.

Only CEEFPA is before us. Applicants, five New York

landlords and one landlords' association, seek an "extraordinary" form of relief: "an injunction against enforcement of a presumptively constitutional state legislative act," *Respect Maine PAC* v. *McKee*, 562 U. S. 996 (2010), in circumstances where the request for an injunction was denied in the lower courts, and the court of appeals has yet to issue a substantive ruling. Moreover, the challenged law will expire in less than three weeks. Under these circumstances, such drastic relief would only be appropriate if "the legal rights at issue [we]re indisputably clear and, even then, sparingly and only in the most critical and exigent circumstances." *South Bay United Pentecostal Church* v. *Newsom*, 590 U. S. \_\_\_, \_\_\_ (2020) (ROBERTS, C. J., concurring) (slip op., at 2) (internal quotation marks omitted). I conclude that this strict standard is not met here, for three reasons.

First, the legal rights at issue in this case are not "indisputably clear." Applicants argue that CEEFPA denies landlords due process of law because once a tenant submits an attestation of financial hardship, evictions cannot proceed and the landlord cannot challenge the tenant's claim of hardship, for example, in court. Respondent argues, however, that the law is best viewed not as a deprivation of the right to challenge a tenant's hardship claim but as simply delaying the exercise of that right—as of now for less than three weeks until the law expires. After August 31, New York's eviction proceedings will be conducted exactly as they were before CEEFPA's enactment. Our precedents do not make it "indisputably clear" that this delay violates the Constitution. See *Sosna* v. *Iowa*, 419 U. S. 393, 410 (1975) (due process is not offended when "the gravamen of [the] claim is not total deprivation . . . but only delay").

Applicants also argue that CEEFPA violates their First Amendment right against compelled speech, because it requires them to provide their tenants with certain notices. However, there are persuasive arguments that CEEFPA re-

quires only the dissemination of "purely factual and uncontroversial information" in the context of commercial speech and is therefore authorized by our precedents. *Zauderer* v. *Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U. S. 626, 651 (1985). Given the arguments on the other side, I again cannot say that the legal rights in issue are indisputably clear.

Second, applicants have not shown that critical or exigent circumstances justify our intervention. As I have said, CEEFPA's pause on eviction proceedings will expire in less than three weeks, alleviating the hardship to New York landlords. Any hardship is further alleviated by provisions of CEEFPA that provide relief from foreclosure for property owners who own 10 or fewer dwelling units. See 2020 N. Y. Laws ch. 381, pt. B, subpts. A–B. Further, landlords' hardship is alleviated because CEEFPA does not preclude them from seeking unpaid rent and other damages in a common-law action. Finally, respondent states that New York is currently distributing more than $2 billion in aid that can be used in part to pay back rent, thereby helping to alleviate the need for evictions. See 2021 N. Y. Laws ch. 53, p. 635.

While applicants correctly point out that there are landlords who suffer hardship, we must balance against the landlords' hardship the hardship to New York tenants who have relied on CEEFPA's protections and will now be forced to face eviction proceedings earlier than expected. This is troubling because, as noted, New York is in the process of distributing over $2 billion in federal assistance that will help tenants affected by the pandemic avoid eviction. See *ibid.*; Consolidated Appropriations Act, 2021, H. R. 133, 116th Cong., 2d Sess., 686–692 (2020). Ending CEEFPA's protections early may lead to unnecessary evictions. It is impossible—especially on the abbreviated schedule of an application for an emergency injunction—to know whether more hardship will result from leaving CEEFPA in place or

from barring its enforcement.

Third, the public interest weighs in favor of respecting New York's "especially broad" latitude "to act in areas fraught with medical and scientific uncertainties." *Marshall* v. *United States*, 414 U. S. 417, 427 (1974). The New York Legislature is responsible for responding to a grave and unpredictable public health crisis. It must combat the spread of a virulent disease, mitigate the financial suffering caused by business closures, and minimize the number of unnecessary evictions. The legislature does not enjoy unlimited discretion in formulating that response, but in this case I would not second-guess politically accountable officials' determination of how best to "guard and protect" the people of New York. *South Bay United Pentecostal Church*, 590 U. S., at \_\_\_ (ROBERTS, C. J., concurring) (slip op., at 2) (quoting *Jacobson* v. *Massachusetts*, 197 U. S. 11, 38 (1905)).

For these reasons, I would not grant relief now, and therefore respectfully dissent. Of course, if New York extends CEEFPA's provisions in their current form, applicants can renew their request for an injunction.