362 So.2d 936 (1978)
Roland GALLIE, Petitioner,
v.
Louis L. WAINWRIGHT, Etc., Respondent.
No. 52749.
Supreme Court of Florida.
September 14, 1978.
*937 Ray Sandstrom of Sandstrom & Haddad, Fort Lauderdale, and Dominic P. Gentile of National College of Criminal Defense Lawyers and Public Defenders, University of Houston, Houston, Tex., for petitioner.
Robert L. Shevin, Atty. Gen., Tallahassee, and Harry M. Hipler and Robert L. Bogen, Asst. Attys. Gen., West Palm Beach, for respondent.
ENGLAND, Chief Justice.
Roland Gallie was convicted of possessing cocaine and sentenced to three years imprisonment. To avoid immediate incarceration he requested bond pending his appeal of that conviction. The trial court's denial of bond precipitated Gallie's petition for a writ of habeas corpus in this Court, asking that we allow and set bond for him. We have jurisdiction. Article V, Section 3(b)(6), Florida Constitution.
The state objected to any bond for Gallie on the basis of Section 903.132(1), Florida Statutes (1977), and Florida Rule of Criminal Procedure 3.691(a), both of which provide that bond pending an appeal is not available to one convicted of a felony who has previously been convicted of another felony, and whose civil rights have not been restored.[1] Gallie, it seems, had been convicted *938 of a felony in 1969. He had served his full sentence and been released in 1973, but he had never sought or obtained a formal restoration of his civil rights from Florida's clemency authority, the governor and cabinet.[2] Gallie argued, however, that in 1975 the governor and cabinet adopted a rule which provides for an automatic restoration of civil rights upon final release of a prisoner,[3] so that he met all the eligibility requirements for bond pending appeal. The trial judge rejected Gallie's request for bond, despite his assertion, on the ground that the governor's and cabinet's automatic restoration rule invalidly abdicates constitutional responsibility to evaluate individually each applicant for a restoration of civil rights.[4] (The trial judge also expressed uncertainty as to whether the rule would operate retroactively on a felony conviction obtained prior to its effective date, and noted that neither the bond-denial statute nor rule would have any practical effect if the automatic restoration rule were given effect.)
We considered Gallie's contentions concerning his alleged unlawful detention to be sufficiently compelling to require a written response from the state, and we allowed oral argument on the issues.[5] After respondent had filed a return to the writ of habeas corpus, Gallie called to the Court's attention the decision in Escandar v. Ferguson, 441 F. Supp. 53 (S.D.Fla. 1977), which addressed certain of the constitutional questions raised by Gallie's petition. So that these issues could be more fully developed, we directed both parties to submit supplemental briefs[6] on the constitutional questions. Having now reviewed the arguments of the parties on all points presented, we conclude that Gallie is not entitled to the relief requested on any grounds.
Gallie first asserts that he is entitled to an automatic restoration of his civil rights under Sections 940.05 and 940.06, Florida Statutes (1975), both of which have been in effect since 1969.[7] The former states that convicted felons "may" be entitled to a restoration of civil rights upon completion of their prison terms, and the latter directs that the Parole and Probation Commission "shall" submit to the governor and cabinet the names of persons eligible under Section 940.05. The maximum relief which Gallie could obtain from this Court under these provisions is a writ of mandamus commanding the Commission to perform its statutory duty of submitting his name to the clemency official.[8] Our directive *939 would not assure a restoration of Gallie's civil rights, however, since Rule 6B of the Rules of Executive Clemency now in effect requires an "application" for a restoration of rights by any person released from jail prior to November 1, 1975, the effective date of the rules.[9] Gallie admittedly has not filed such an application. We decline to issue a writ of mandamus to a state agency to perform a ministerial act which Gallie could himself perform under applicable clemency procedures.
Gallie's second point here  reliance on the governor's and cabinet's automatic restoration rule[10]  is met with the state's assertion and the trial court's determination that the rule is in violation of the Constitution. Once again we decline to address that issue[11] because Rule 6B, by its terms, requires an application for a restoration of rights. Since Gallie admits that he had not complied with that procedural prerequisite, we do not have a proper case in which to consider the constitutional question posed.[12]
Finally, Gallie challenges the constitutionality of the statute and rule which prohibit bail pending appeal for previously convicted felons, principally on the grounds that they deny him equal protection and due process of law as guaranteed by the Constitution of the United States and of the State of Florida.[13] Relying heavily on the recent United States District Court decision in Escandar v. Ferguson, 441 F. Supp. 53 (S.D.Fla. 1977), he argues that these provisions violate equal protection by creating a classification that affects his fundamental rights in a way which is not the least restrictive means of effectuating the state's objective, and that they deny due process by establishing an irrebuttable presumption that is arbitrary and unreasonable.
In Escandar, the federal district court was confronted with an attack on the constitutional validity of Article I, Section 14 of the Florida Constitution and Florida Rule of Criminal Procedure 3.130(a), which together establish a right to reasonable bail before a conviction unless the accused is charged with "a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great."[14] In granting the petitioners' *940 request for a writ of habeas corpus, the court concluded that the Florida courts' interpretation[15] of those provisions as denying all discretion to allow bail in such cases rendered them unconstitutional on federal equal protection and due process grounds.
As to equal protection, the court reasoned that because the constitutional provision and procedural rule create a classification which denies the accused in such cases equal treatment with that afforded other criminal defendants, and because that classification affects certain fundamental rights  namely, the presumption of innocence and the right to a fair trial (through ability to assist in the preparation of his defense)  the apparent prohibition of those provisions could "only be upheld if it promotes a compelling governmental interest and is the least restrictive means of effectuating this compelling governmental interest."[16] The court then determined that although the state has a compelling interest in assuring the presence of the accused at trial, there exists a less restrictive means of achieving that interest  that is, by requiring the trial judge to hold an evidentiary hearing for the determination of whether on the totality of the circumstances the defendant should be admitted to bail. In addition, the court found that because one who is convicted of first degree murder and sentenced to life imprisonment is eligible for bond pending appeal under Florida law,[17] it is, "as a matter of law, ... totally unreasonable to deny bond to a defendant awaiting trial on a life felony charge where the proof is evident and the presumption thereof great, and then to allow bond to that same defendant after he has been proven guilty beyond a reasonable doubt."[18]
Turning to the due process argument, the Escandar court found that the Florida procedure denies the accused any opportunity to demonstrate that he would be a good bail risk, thereby establishing an irrebuttable presumption that defendants in such cases will fail to appear in court when their presence is required. Relying on the "irrebuttable presumption" test employed by the United States Supreme Court to invalidate certain state statutes in Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); and Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the federal district court ruled that the irrebuttable presumption created by Florida's Constitution and criminal rule "is not `necessarily or universally true in fact', and the State, by affording a hearing on that issue, has `reasonable alternative means of making the crucial determination.'"[19] The court thus concluded that "[s]uch an irrebuttable presumption sweeps too broadly, and thereby violates the Due Process Clause of the Fourteenth Amendment."[20]
Gallie contends that although different provisions relating to bail are involved in the present case, the reasoning of the Escandar court is equally applicable to the statute and rule challenged here, and should be considered persuasive authority on the *941 issues before this Court. The state argues that Escandar was wrongly decided, but that even if correct it is inapplicable here because fundamentally different principles and policy considerations apply when bail is sought after the accused has been adjudicated guilty of a second or subsequent felony. We agree.
The predecessor to Section 903.132(1)[21] was the object of an unsuccessful attack in Greene v. State, 238 So.2d 296 (Fla. 1970), in which this Court analogized the statute to habitual offender acts and disposed of the equal protection challenge as being "without merit."[22] Assuming for the sake of argument that the equal protection analysis utilized in Escandar is applicable here, it still does not avail Gallie inasmuch as the statute and rule which preclude bond pending appeal deny him no fundamental rights.
In the first place, those fundamental rights on which the court in Escandar predicated its decision  the presumption of innocence and the right to participate in the preparation of a defense to ensure a fair trial  are obviously not present where the defendant has already been tried and convicted. Additionally, we cannot accept Gallie's premise that he has a fundamental right to be heard on the issue of bail risk when it is well-established that there is no absolute constitutional right to bond pending appeal of any state criminal conviction, whether misdemeanor or felony, first or subsequent. Since no fundamental right is affected,[23] and because Gallie concedes that the state's interest in assuring the presence of the accused at the conclusion of the appeal is a compelling interest, it is clear that these provisions do not contravene any constitutional notions of equal protection.
The argument that this statute and rule violate due process by creating an impermissible "irrebuttable presumption" has not previously been considered by this Court, although we have recently dealt with the "irrebuttable presumption" doctrine in criminal cases striking down Florida's statutory bifurcated insanity proceeding, State ex rel. Boyd v. Green, 355 So.2d 789 (Fla. 1978), and upholding the statutory scheme regulating the practice of massage for a fee, State v. Bales, 343 So.2d 9 (Fla. 1977). It is undeniable that Section 903.132(1) and Rule 3.691(a) create an irrebuttable presumption in the sense that they establish one state of facts (a felony conviction for one previously convicted of a felony whose civil rights have not been restored) as conclusive proof of another fact (unreasonable bail risk), and deny any opportunity to disprove the presumed fact. It is equally clear, however, that our inquiry does not end there, for not all conclusive presumptions offend due process.[24] Rather, our determination *942 as to the constitutionality of these bond-denial provisions requires an examination and application of the conclusive presumption doctrine as it has evolved through the decisions of the United States Supreme Court.
Although first employed by the Supreme Court half a century ago to invalidate classifications in the tax laws,[25] the so-called conclusive or irrebuttable presumption doctrine did not fully emerge as an instrument of constitutional adjudication until the last decade. In a series of decisions beginning with Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the Court applied the test to invalidate on due process grounds a variety of statutory and regulatory measures which established permanent and conclusive presumptions. Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (presumption of non-residency for purpose of voting eligibility if durational waiting-period requirement is not satisfied); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (presumption that unwed fathers are unfit to rear children); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (presumption that non-resident status at time of application for admission to state university continues throughout the entire period of attendance); United States Department of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (presumption that a household is not needy for food stamp purposes if it includes persons over 18 years of age that were claimed as dependents by taxpayers who are themselves ineligible for food stamps); Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (presumption that a pregnant teacher is physically incapable of working for five months before expected birth and at least three months after birth). The standard which the Court utilized during this period, as stated in Vlandis, was that a statute embodying an irrebuttable presumption would be deemed invalid "when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination."[26]
Urging the application of the Vlandis test here, Gallie asserts that the presumption that previously convicted felons whose civil rights have not been restored present an unreasonable bail risk is "not necessarily or universally true in fact," and that Florida has a "reasonable alternative means of making the crucial determination" through individualized evidentiary hearings conducted by the trial judge when bond pending appeal is requested after the subsequent felony conviction. The state, on the other hand, contends that the strict standard enunciated in Vlandis has been eroded by subsequent United States Supreme Court decisions which have substituted a mere "reasonableness" test and limited operation of the more strict conclusive presumption doctrine to invalidate only those laws which affect some constitutionally preferred right or privilege. Our review of the authorities leads us to conclude that the state is correct.
In Marshall v. United States, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974), the Court upheld a federal statute which excluded persons with two prior felony convictions from discretionary rehabilitative commitment.[27] Rejecting Justice Marshall's argument in dissent that individualized hearings should be required because the statute "amounts to a conclusive and irrebuttable presumption" impermissibly affecting the prisoner's "important" interest in personal *943 liberty,[28] the majority reasoned that it need only determine whether Congress had a rational basis for the enactment, and concluded that the denial of eligibility for treatment could be sustained on several legitimate grounds.[29]
The implicit retreat from Vlandis signalled in Marshall became more apparent in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). There the Court reversed a lower court's invalidation of a law which conclusively denied Social Security benefits to surviving dependents who were related to the wage-earner for less than nine months prior to his death. Although acknowledging that the statute contained an irrebuttable presumption, the Court in Weinberger examined at length the strict application of the test in previous decisions and concluded that
"extension of the holdings of Stanley, Vlandis, and LaFleur ... would turn the doctrine of those cases into a virtual engine of destruction for countless legislative judgments which have heretofore been thought wholly consistent with the Fifth and Fourteenth Amendments to the Constitution."[30]
Distinguishing those earlier cases on the ground that they merited closer scrutiny because each involved some "constitutionally protected status,"[31] the Court proceeded to fashion a more relaxed standard for assessing conclusive presumption claims, reflecting greater deference to legislative discretion:
"The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule."[32]
As we have previously noted, a convicted defendant enjoys no "constitutionally protected status" with regard to bail pending appeal. It follows therefore that the proper test to be applied in the present case is not the severe standard of Vlandis, but the more lenient "reasonableness" *944 criterion announced in Weinberger, and in that regard we have no doubt that the statute and rule challenged here represent a rational means of achieving a legitimate governmental objective.
The legislature enacted Section 903.132 for the express purpose of providing "a means of protecting the citizens of this state from repeat offenders."[33] In Greene v. State, 238 So.2d 296, 299 (Fla. 1970), we observed as to the predecessor of this statute:
"It is obvious that the statute complained of rests upon, among other grounds, the known propensity of an habitual offender to continue a pattern of criminal activity of a serious nature. Denial of his release on bail after conviction pending appeal because of the likelihood that he will be a poor bail risk cannot be said to be an arbitrary or unreasonable action on the part of the state."
We find nothing irrational about the legislature's judgment that the likelihood of further criminal activity or flight from prosecution in the case of repeat felony offenders whose civil rights have not been restored[34] is sufficiently great that the public interest could be effectively protected only by an absolute prohibition against their release after conviction. Gallie has offered no convincing reason why our conclusion in Greene should not apply with equal force to the provisions presently in controversy; on the contrary, the subsequent Supreme Court decision in Marshall is persuasive authority reinforcing the proposition that it is not unreasonable to attach a conclusive presumption of high risk of non-cooperation to previously convicted felons.[35] We believe these authorities are dispositive on this issue.
With reference to the other facet of the Weinberger test, we do not think it arbitrary in this case for the legislature to have found that "the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule."[36] It may be true, as Gallie asserts, that under some circumstances a person who might otherwise qualify for bail if given an opportunity to be heard will, at least temporarily, be unfairly detained as a result of these provisions. We must recognize, however, that the Constitution does not invariably require, and practical considerations do not always realistically permit, such absolute precision to be demanded of the legislature. While individualized hearings would undoubtedly culminate in justice for some, we cannot say that the legislature was unreasonable in determining that because of the time and expense required for such hearings (compounded by the likelihood that the mere possibility of release would encourage appellants to request bail in virtually every case), and in view of the potential threat to society which would inevitably result from the release of some undeserving reconvicted felons, the need for a prophylactic rule outweighs the limited detrimental consequences for those unfortunate few. Obviously, the evaluation of an individual as a bail risk, which in practice is really little more than an attempt to predict behavior, is at best an uncertain task, and the costs of a misjudgment may well be measured in lives as well as time, money, and frustrated prosecutions.
For these reasons, we hold that the state could reasonably classify previously convicted felons whose civil rights have not been restored differently from other criminal defendants for purposes of determining entitlement to bail pending appeal, and that the legislature could establish an irrebuttable presumption that these persons as a class represent an unreasonable bail risk so as to be denied bail without a hearing. Section 903.132(1) and Rule 3.691(a) are constitutionally valid.
*945 The relief requested by Gallie must, therefore, be denied, and the writ of habeas corpus previously issued in this cause is discharged.
It is so ordered.
BOYD, OVERTON and ALDERMAN, JJ., concur.
ADKINS and HATCHETT, JJ., concur in result only.
NOTES
[1] Section 903.132(1), as amended by Chapter 76-138, Laws of Florida, and Rule 3.691(a), as amended in The Florida Bar re Florida Rules of Criminal Procedure, 343 So.2d 1247, 1262 (Fla. 1977), both provide in part that

"no person may be admitted to bail upon appeal from a conviction of a felony unless the defendant establishes that the appeal is taken in good faith, on grounds fairly debatable, and not frivolous; provided that in no case shall bail be granted if such person has previously been convicted of a felony, ... and such person's civil rights have not been restored... ."
[2] Art. IV, § 8(a), Fla. Const.
[3] Rule 6A [formerly 9A] of the Rules of Executive Clemency provides:

"When a person receives final release from the Florida Parole and Probation Commission, Department of Offender Rehabilitation or county jail, his civil rights shall be automatically reinstated, except for his right to own, possess or use a firearm."
[4] We expressed no opinion on the validity of the automatic restoration rule when we recently considered its effect on bar admittance. In re Florida Board of Bar Examiners, 341 So.2d 503, 505 (Fla. 1976).
[5] By an amendment to the petition filed on the day we directed the state to respond, Gallie also asks us to rule that the information by which he was charged was deficient. He correctly cites Gibbs v. Mayo, 81 So.2d 739 (Fla. 1955), for the proposition that an indictment or information may be challenged by petition for a writ of habeas corpus. The state has not responded to this challenge, however, inasmuch as we directed a return only on the original issues asserted by Gallie. Nonetheless, we have analyzed the alleged infirmity in the information and hold that it is not defective.
[6] See Fla.App.R. 3.7(d); Langford v. King Lumber & Mfg. Co., 127 Fla. 111, 172 So. 686 (1937).
[7] Ch. 69-29, Laws of Fla.
[8] Under Article V, Section 2(a), Florida Constitution, we could treat the request for habeas corpus as a request for the appropriate form of relief.
[9] The full text of the Rules of Executive Clemency is reported as an appendix to our decision in Sullivan v. Askew, 348 So.2d 312, 319 (Fla. 1977).
[10] The 1974 legislature's express attempt to restore civil rights by operation of law upon a felon's completion of his sentence was considered an unconstitutional invasion of the powers assigned to the executive branch of government. In re Advisory Opinion of the Governor Civil Rights, 306 So.2d 520 (Fla. 1975). Undoubtedly, this advisory opinion led to the adoption of an automatic restoration rule by the governor and cabinet.
[11] See note 4 above.
[12] See, e.g., Jones v. City of Sarasota, 89 So.2d 346 (Fla. 1956).
[13] U.S.Const. amend. XIV; Art. I, §§ 2 and 9, Fla. Const. Gallie also asserts that these provisions violate the Eighth Amendment's prohibition against excessive bail as applied to the states through the Fourteenth Amendment, and suggests that the statute represents an impermissible encroachment on the judicial power by the legislature in violation of Article II, Section 3, Florida Constitution. Even assuming, however, that the Eighth Amendment is applicable to the states, see Schilb v. Kuebel, 404 U.S. 357, 365, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971), it is clear that "there is no absolute federal constitutional right to bail after a state conviction." Roberson v. Connecticut, 501 F.2d 305, 308 (2d Cir.1974). See also Hamilton v. New Mexico, 479 F.2d 343 (10th Cir.1973); Bloss v. Michigan, 421 F.2d 903 (6th Cir.1970); United States ex rel. Fink v. Heyd, 408 F.2d 7 (5th Cir.1969). In any event, we have previously considered and rejected both of these contentions in Greene v. State, 238 So.2d 296 (Fla. 1970).
[14] Art. I, § 14, Fla. Const. states:

"Until adjudged guilty, every person charged with a crime or violation of municipal or county ordinance shall be entitled to release on reasonable bail with sufficient surety unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great."
Fla.R.Crim.P. 3.130(a) provides in part:
"All persons in custody for the commission of an offense unless it is a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great shall be entitled as of right to be admitted to bail before conviction."
Of course, these provisions are expressly limited to preconviction bail requests, and thus have no bearing on Gallie's claim.
[15] The petitioners in Escandar had been denied bail by the trial judge on the ground that the constitutional provision and criminal rule completely divested the court of jurisdiction or power to grant such relief, and their petition for a writ of habeas corpus or mandamus in the Third District Court of Appeal, treated as a motion to review denial of bail, was denied by that court after a hearing. 441 F. Supp. at 56.
[16] 441 F. Supp. at 58.
[17] Except when requested by one convicted of a capital offense, or by one convicted of a felony who has a prior felony conviction and whose civil rights have not been restored, Rule 3.691(a) permits the granting of bail pending appeal at the discretion of either the trial or appellate court. See also Wells v. Wainwright, 260 So.2d 196 (Fla. 1972); Younghans v. State, 90 So.2d 308 (Fla. 1956); Hedden v. State, 275 So.2d 52 (Fla. 2d DCA 1973), cert. denied, 419 U.S. 1031, 95 S.Ct. 513, 42 L.Ed.2d 306 (1974).
[18] 441 F. Supp. at 59.
[19] Id. at 59-60.
[20] Id. at 59.
[21] § 903.131, Fla. Stat., enacted by Ch. 69-307, Laws of Fla., and codified as § 903.132, Fla. Stat. (1969), provided:

"No person may be admitted to bail upon appeal from a conviction of a felony if such person has previously been convicted of a felony, the commission of which occurred prior to the commission of the subsequent felony, and such person's civil rights have not been restored."
The inherent conflict between this prohibitive statute and our Court rule, which made bail in such cases discretionary, resulted in rulings by the First and Second District Courts of Appeal that the rule took precedence over the statute because bail is a procedural matter. Rolle v. State, 314 So.2d 624 (Fla. 1st DCA 1975); Bamber v. State, 300 So.2d 269 (Fla. 2d DCA 1974). It was expressly in response to these decisions that the legislature enacted Chapter 76-138, which revised Section 903.132 into its present form and repealed Rules 3.130(a) and 3.691(a) "insofar as they are inconsistent with" the amended statute. We have since acted to conform those rules. The Florida Bar re Florida Rules of Criminal Procedure, 343 So.2d 1247, 1250, 1262 (Fla. 1977).
[22] 238 So.2d at 300.
[23] We have recently held that where "no fundamental right or suspect classification is at issue ..., all we need find is the existence of a rational basis for [an] attempted legislative exercise of the State's police power." State v. Bales, 343 So.2d 9, 11 (Fla. 1977). Gallie does not assert that the classification created by these provisions  that is, the differential treatment of repeat felony offenders whose civil rights have not been restored  is in any way "suspect" in the constitutional sense.
[24] For a survey of some conclusive presumptions which will withstand due process scrutiny, see Ackerman, The Conclusive Presumption Shuffle, 125 U.Pa.L.Rev. 761, 799-808 (1977).
[25] See Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932); Hoeper v. Tax Comm'n, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248 (1931); Schlesinger v. Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926).
[26] 412 U.S. at 452, 93 S.Ct. at 2236.
[27] 18 U.S.C. § 4251(f)(4), a provision of the Narcotic Addict Rehabilitation Act of 1966, provides:

"(f) `Eligible offender' ... does not include 
* * * * * *
(4) an offender who has been convicted of a felony on two or more prior occasions."
[28] 414 U.S. 417, 435, 94 S.Ct. 700, 710 (Marshall, J., dissenting).
[29] Noting that "legislative classifications need not be perfect or ideal," the Court found that Congress could have grounded its discriminatory policy decision on, among other reasons, the probability that persons with two or more felony convictions were "more `hardened' and thus a greater potential danger to society on early release," and that "the fact of two prior felony convictions may be said to evidence a lesser susceptibility of deterrence." 414 U.S. at 428-30, 94 S.Ct. at 707-708.
[30] 422 U.S. at 772, 95 S.Ct. at 2470. This sentiment found expression not only through Justice Rehnquist's consistent opposition to the conclusive presumption doctrine, see his dissenting opinions in LaFleur, 414 U.S. 632, 657, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Murry, 413 U.S. 508, 522, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); and Vlandis, 412 U.S. 441, 463, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), but has been voiced together with other criticisms in the literature of the profession. See, e.g., Note, The Irrebuttable Presumption Doctrine in the Supreme Court, 87 Harv.L.Rev. 1534 (1974); Note, Irrebuttable Presumptions: An Illusory Analysis, 27 Stan.L.Rev. 449 (1975).
[31] 422 U.S. at 772, 95 S.Ct. 2457. See also Comment, The Burger Court's "Newest" Equal Protection: Irrebuttable Presumption Doctrine Rejected  Two-Tier Review Reinstated, 1977 Wash.U.L.Q. 140, 147 nn. 37 and 39. But see Ackerman, supra note 24, at 773 n. 66 and accompanying text.
[32] 422 U.S. at 777, 95 S.Ct. at 2472-73. While it might be argued that the subsequent appearance of the conclusive presumption doctrine in Turner v. Department of Employment Security, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975), to invalidate a law making pregnant women ineligible for unemployment compensation benefits during a specified period before and after childbirth, signalled a return to strict analysis, it seems more likely that the Court merely applied LaFleur as controlling precedent to protect a constitutionally favored interest (right to bear children). The application of the "reasonableness" standard in the more recent decision of Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), in which the Court by per curiam opinion upheld a state law requiring that uniformed state police officers retire at age 50, indicates that Weinberger survives and will continue to govern most conclusive presumption claims.
[33] Ch. 76-138, Laws of Fla.
[34] Indeed, in view of the ease with which a previously convicted felon may obtain a restoration of his civil rights in Florida, see note 3 above, the failure to do so may in itself signify the existence of extraordinary characteristics justifying cautious treatment.
[35] See note 29 above.
[36] 422 U.S. at 777, 95 S.Ct. at 2473.