923 So.2d 566 (2006)
Otis BUTLER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-3095.
District Court of Appeal of Florida, Fourth District.
March 22, 2006.
*567 Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Otis Butler pled guilty to sexual battery on a person less than twelve years of age by a person eighteen years of age or older. Butler was sentenced to fifteen years in prison plus ten years' probation for the offense. After sentencing, the state moved to declare Butler a sexual predator pursuant to section 775.21, Florida Statutes (2002). In response, Butler moved the court to declare the statute unconstitutional, arguing that it violated his right to substantive due process. The trial court denied his motion and declared Butler a sexual predator. He appeals, again challenging the facial constitutionality of the statute. We affirm, holding the statute constitutional on the grounds raised by Butler.
Butler argues that section 775.21 is unconstitutional because it violates his substantive due process rights. Butler argues that there is a substantive due process violation because: 1) the statute places an unreasonable burden on a designee's liberty interests without affording that designee the opportunity to disprove his or her dangerousness; and 2) the statute establishes an irrebuttable presumption that certain offenders are to be designated as "sexual predators" without providing an opportunity for the designee to disprove his or her dangerousness. He asserts that the statute will affect his liberty interests by limiting his right to move and travel without notifying the state of all his movements, either in or out of the State of Florida. He claims that the sexual predator designation will also affect his liberty interests by negatively impacting his ability to find housing and employment.
The Florida Sexual Predators Act enumerates certain offenses and mandates that a person convicted of any such offense be designated a "sexual predator." See § 775.21(4)(a)(1), Fla. Stat. (2002) (sexual predator criteria); § 775.21(5), Fla. Stat. (designation procedure). Before designating an offender as a "sexual predator," the sole determination to be made by the trial court is whether that person has a requisite criminal conviction. See § 775.21(5)(a)(1), Fla. Stat. If a person has been convicted of any qualifying offense, the court must designate the offender as a "sexual predator," and he or she is subject to the Act's requirements.
Once an offender has been designated a "sexual predator," the registration and public notification requirements of the Act are triggered. See § 775.21(6) & (7), Fla. Stat. (2002). An offender who is not in custody must, within forty-eight hours of establishing temporary or permanent residence in Florida, register with the Department of Law Enforcement or, alternatively, the sheriff's office, and with the Department of Highway Safety and Motor Vehicles. See § 775.21(6)(a), (e), & (f), Fla. Stat. The definition of "temporary residence" includes any place where the sexual predator may reside for a period of four or more days in any month. See *568 § 775.21(2)(g), Fla. Stat. Upon registration, an offender must provide his or her name, age, race, sex, date of birth, height, weight, hair and eye color, a photograph, address of legal residence, address of any current temporary residence, "a brief description of the crime or crimes committed by the offender," and genetic material. See § 775.21(6)(a)1. & 2., Fla. Stat. If an offender plans to move out-of-state, he or she must inform the Department of Law Enforcement at least forty-eight hours before leaving. See § 775.21(6)(i), Fla. Stat. All of this registration information must be updated by the offender for the duration of his or her life. See § 775.21(6)(l), Fla. Stat. Failure to comply with these registration requirements is a third-degree felony. See § 775.21(10)(a), Fla. Stat. Additionally, the Act prohibits specific offenders from working "at any business, school, day care center, park, playground, or other place where children regularly congregate . . . ." § 775.21(10)(b), Fla. Stat.
The statute contains a statement of legislative findings and intent, which include the following:
(a) Repeat sexual offenders, sexual offenders who use physical violence, and sexual offenders who prey on children are sexual predators who present an extreme threat to the public safety. Sexual offenders are extremely likely to use physical violence and to repeat their offenses, and most sexual offenders commit many offenses, have many more victims than are ever reported, and are prosecuted for only a fraction of their crimes. This makes the cost of sexual offender victimization to society at large, while incalculable, clearly exorbitant.
(b) The high level of threat that a sexual predator presents to the public safety, and the long-term effects suffered by victims of sex offenses, provide the state with sufficient justification to implement a strategy that includes:
. . . .
(c) The state has a compelling interest in protecting the public from sexual predators and in protecting children from predatory sexual activity, and there is sufficient justification for requiring sexual predators to register and for requiring community and public notification of the presence of sexual predators.
§ 775.21(3), Fla. Stat. (emphasis added).
In Milks v. State, 894 So.2d 924 (Fla. 2005), our supreme court concluded that the Act satisfied procedural due process requirements, but left open the issue of whether the statute violated substantive due process. Id. at 928, n. 5. This court in Reyes v. State, 854 So.2d 816 (Fla. 4th DCA 2003), determined that the Act did not violate substantive due process. There, Reyes had claimed that the registration requirements under the Act violated his right to privacy under article I, section 23 of the Florida Constitution. We held that the stated purpose of the Act was sufficiently compelling to warrant an intrusion on privacy, and we referred to the statutory language quoted in this opinion.
The Eleventh Circuit made a more thorough analysis of the registration restrictions in Doe v. Moore, 410 F.3d 1337 (11th Cir.2005). While there the court was considering the registration restrictions of the sexual offender statute, rather than the sexual predator statute, they are mainly the same in both statutes.[1]
*569 The court explained the required analysis of a substantive due process claim under federal law:
We must analyze a substantive due process claim by first crafting a "careful description of the asserted right." [Reno v.] Flores, 507 U.S. [292] at 302, 113 S.Ct. [1439] at 1447 [123 L.Ed.2d 1 (1993)]; accord [Washington v.] Glucksberg, 521 U.S. [702] at 720-21, 117 S.Ct. [2258] at 2268 [138 L.Ed.2d 772 (1997)]. Second, we must determine whether the asserted right is "one of `those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Williams v. Attorney Gen. of Alabama, 378 F.3d 1232, 1239 (11th Cir.2004) (quoting Glucksberg, 521 U.S. at 720-21, 117 S.Ct. at 2268), cert. denied, Williams v. King, 543 U.S. 1152, 125 S.Ct. 1335, 161 L.Ed.2d 115 (2005).
Id. at 1343. While the plaintiffs in Doe sought to broadly describe their rights being violated, the court carefully described the right at issue as "the right of a person, convicted of `sexual offenses,' to refuse subsequent registration of his or her personal information with Florida law enforcement and prevent publication of this information on Florida's Sexual Offender/Predator website." Id. at 1344.
Turning to the issue of whether such a right is a "fundamental" right, the court found nothing in this nation's history or tradition that would elevate the asserted right to a fundamental right. Id. at 1345. Accordingly, the court declined to review the statute with strict scrutiny, but instead applied the rational basis standard. Id. The court reasoned that the statute met the rational basis test because the statute allows citizens to determine whether sex offenders live in their neighborhood and to take any appropriate precautions. Id. Thus, the court held that the Sex Offender Act was rationally related to the government's legitimate interest in protecting its citizens from criminal activity. Id. at 1345-46. See also Garcia v. State, 909 So.2d 971 (Fla. 3d DCA 2005). The fifth district relied on the reasoning of Doe and applied it to the registration requirements of the sexual predator statute in Hanson v. State, 905 So.2d 1036 (Fla. 5th DCA 2005).
Although in the present case Butler also attempts to broadly frame the right at stake as the right to travel, we agree with Moore that the relevant right may be defined as his right to be free from registration requirements. Unlike State v. J.P., 907 So.2d 1101 (Fla.2004), where our supreme court held that a juvenile curfew ordinance was an unconstitutional burden on a minor's fundamental right to travel where it prevented the minor from being out after a certain hour, here there is no burden on travel but instead on privacy in the notification and registration process. We have already determined in Reyes that this provision is not unconstitutional under a substantive due process analysis based upon a right of privacy. We conclude that it is also not an unconstitutional burden on the right to travel.
Butler also makes a passing reference to the Act affecting his liberty interest and negatively impacting his ability to find housing and employment. He does not explain how this is so, nor does he cite to any cases or undertake any analysis to develop these arguments. Without further explanation of this claim, we do not address it.
*570 Finally, Butler argues that the statute violates his substantive due process rights by creating an irrebuttable presumption of dangerousness. In determining whether the legislative use of a conclusive or irrebuttable presumption violates a substantive due process interest, the court in Gallie v. Wainwright, 362 So.2d 936 (Fla.1978), noted that the United States Supreme Court developed the doctrine when reviewing a variety of statutory and regulatory provisions during the 1970s. Gallie explained, "The standard which the Court utilized during this period, as stated in Vlandis,[2] was that a statute embodying an irrebuttable presumption would be deemed invalid `when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination.'" Id. at 942 (quoting Vlandis v. Kline, 412 U.S. 441, 452, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973)).
However, the Supreme Court shifted its analysis in Marshall v. United States, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974), when it upheld a federal statute which excluded a felon with two prior convictions from rehabilitative commitment. Although the felon claimed his liberty interest had been implicated by denial of rehabilitation without an individualized hearing, the majority determined that it need only determine whether Congress had a rational basis in enacting this conclusive presumption against rehabilitation. Id. at 428-30, 94 S.Ct. 700. Later, in Weinberger v. Salfi, 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court explained its retreat from the Vlandis line of cases by noting that in those cases, the invalid irrebuttable presumptions had dealt with some "constitutionally protected status."
The Gallie court applied the rational basis analysis of Marshall and Weinberger to the presumption that previously convicted felons were not entitled to bail on appeal. Noting that the convicted felon had no "constitutionally protected status" with regard to bail on appeal, the court used the reasonable basis test of Weinberger and determined that the rule and statute represented a reasonable means of attaining a rational legislative objective. In an analysis which could mirror the arguments made in this case, the Gallie court stated:
The legislature enacted Section 903.132 for the express purpose of providing "a means of protecting the citizens of this state from repeat offenders." In Greene v. State, 238 So.2d 296, 299 (Fla.1970), we observed as to the predecessor of this statute:
"It is obvious that the statute complained of rests upon, among other grounds, the known propensity of an habitual offender to continue a pattern of criminal activity of a serious nature. Denial of his release on bail after conviction pending appeal because of the likelihood that he will be a poor bail risk cannot be said to be an arbitrary or unreasonable action on the part of the state."
We find nothing irrational about the legislature's judgment that the likelihood of further criminal activity or flight from prosecution in the case of repeat felony offenders whose civil rights have not been restored is sufficiently great that the public interest could be effectively protected only by an absolute prohibition against their release after conviction. Gallie has offered no convincing reason why our conclusion in Greene should not apply with equal force to the provisions presently in controversy; on the contrary, the subsequent Supreme *571 Court decision in Marshall is persuasive authority reinforcing the proposition that it is not unreasonable to attach a conclusive presumption of high risk of non-cooperation to previously convicted felons. We believe these authorities are dispositive on this issue.
With reference to the other facet of the Weinberger test, we do not think it arbitrary in this case for the legislature to have found that "the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule." It may be true, as Gallie asserts, that under some circumstances a person who might otherwise qualify for bail if given an opportunity to be heard will, at least temporarily, be unfairly detained as a result of these provisions. We must recognize, however, that the Constitution does not invariably require, and practical considerations do not always realistically permit, such absolute precision to be demanded of the legislature. While individualized hearings would undoubtedly culminate in justice for some, we cannot say that the legislature was unreasonable in determining that because of the time and expense required for such hearings (compounded by the likelihood that the mere possibility of release would encourage appellants to request bail in virtually every case), and in view of the potential threat to society which would inevitably result from the release of some undeserving reconvicted felons, the need for a prophylactic rule outweighs the limited detrimental consequences for those unfortunate few. Obviously, the evaluation of an individual as a bail risk, which in practice is really little more than an attempt to predict behavior, is at best an uncertain task, and the costs of a misjudgment may well be measured in lives as well as time, money, and frustrated prosecutions.
Gallie, 362 So.2d at 944 (footnotes omitted). The same arguments apply to the Sexual Predator Act and the irrebuttable presumption of dangerousness requiring the imposition of the restrictions in the Act. Although it may be that some persons designated sexual predators will not pose a potential threat to society, the legislative determinations show the substantial likelihood of recidivism, and society has the right to protect its citizens, particularly its children, from such individuals. Thus, we cannot say that the legislative determination of an irrebuttable presumption is unconstitutional.
We note, however, that appellant did not argue that the right he seeks to protect is a fundamental right. In State v. Robinson, 873 So.2d 1205 (Fla.2004), our supreme court determined that the Sexual Predator Act implicates substantive due process concerns, applying the "stigma-plus" test. However, although the court determined that the Act implicated the defendant's liberty interest, it did not decide that the interest was a fundamental one. "[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, `deeply rooted in this Nation's history and tradition,' and `implicit in the concept of ordered liberty,' such that `neither liberty nor justice would exist if they were sacrificed[.]'" Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (internal citations omitted). In City of Lauderhill v. Rhames, 864 So.2d 432, 439, n. 8. (Fla. 4th DCA 2003), we said of Glucksberg:
In Glucksberg, the Supreme Court discussed the parameters of substantive due process and the fundamental rights protected by it. The "fundamental rights and liberty interests" protected *572 by substantive due process include "the specific freedoms protected by the Bill of Rights," and the "rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." 521 U.S. at 720, 117 S.Ct. 2258 (citations omitted). The Court also acknowledged that there was no bright-line test to identify protected fundamental rights; it wrote that "the outlines of the `liberty' specially protected by the Fourteenth Amendment-never fully clarified, to be sure, and perhaps not capable of being fully clarified-have at least been carefully refined by concrete examples involving fundamental rights found to be deeply rooted in our legal tradition." Id. at 722, 117 S.Ct. 2258.
Butler has not argued that the rights he is asserting are fundamental and "deeply rooted in our legal tradition." Thus, because no claim of infringement of a fundamental right is alleged, we conclude that the Gallie reasonable basis analysis of the irrebuttable presumption is the appropriate test to apply. The statute meets that test.
Based upon the arguments made, we hold that the sexual predator designation provisions of the Florida Sexual Predator Act challenged by Butler in this case are constitutional. We therefore affirm.
STEVENSON, C.J., and MAY, J., concur.
NOTES
[1] The principal difference between the two statutes is that the sexual predator statute, unlike the sexual offender statute, restricts the employment of persons designated as sexual predators by precluding them from working in a school, day care center, park, playground, ground, or any other place where children congregate. See § 775.21(10)(b), Fla. Stat.
[2] Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).