CANADY, J.,
dissenting.
The fee schedule in section 440.34, Florida Statutes, embodies a policy determination by the Legislature that there should be a reasonable relationship between the value of the benefits obtained in litigating a workers’ compensation claim and the amount of attorney’s fees the employer or carrier.is required to.pay to the claimant. This policy violates, none of the constitutional provisions on which the petitioner relies. Accordingly, I dissent from the majority’s invalidation of this- statutory provision. : .
In reaching the conclusion that the statute violates due process, the majority fails to-directly address the actual policy of-the statute. Instead, the majority assumes— without any reasoned explanation — that due process requires a particular definition of “reasonableness” in the award of statutory attorney’s fees. The definition assumed by the majority categorically precludes the legislative policy requiring a reasonable relationship between the amount of a fee award and the amount of the recovery obtained by the efforts of the attorney. Certainly, this legislative policy may be subject to criticism. But there is no basis in our precedents or federal law for declaring it unconstitutional.
Although the Legislature long ago made provision for the award'of attorney’s fees to workers’ compensation claimants, we have never held that — as the majority asserts — “a reasonable attorney’s fee [is] the linchpin to the constitutionality of the workprs’ compensation law.” Majority op. at 435. And we have never held that it is unreasonable to require that an award of attorney’s fees be commensurate with the benefits obtained. The policy adopted by the Legislature1 in section 440.34 may be subject to criticism, but it unquestionably has a rational basis.
This case illustrates the rationale for the legislative policy requiring that a fee award be. commensurate with the recovery obtained. Here, the value of the claim was $822.70, and the claimant sought attorney’s fees in the amount of $36,817.50 — a fee nearly 45 times the amount of the recovery. Of course, an argument can be made that an award of fees in an amount so disproportionate to the recovery is necessary and appropriate to allow the effective litigation of a complex low-value claim, And a counter argument can be- made that such disproportionate fee- awards impose an unwarranted social cost. But the question for this Court is not which side of this policy debate has the best argument, but whether the policy adopted by the Legislature violates some constitutional requirement.
Our precedents and federal law provide no authority to support the proposition that due process — or any other constitutional requirement relied on by the petitioner — requires that statutory fee awards *451 fully compensate for the effective litigation of all claims. Under the American Rule, parties must ordinarily bear the expense of obtaining their own legal representation. Inevitably, under the American Rule, obtaining the assistance of an attorney for the litigation of low-value claims — whether simple or complex — often is not feasible. Given the undisputed constitutionality of the American Rule, there is no impediment to a legislative policy requiring that the amount of statutory fee awards be reasonably related to the amount of the recovery obtained. See Florida Patient’s Comp. Fund v. Rowe, 472 So.2d 1145, 1149 (Fla. 1985) (“We find that an award of attorney fees to the prevailing party is ‘a matter of substantive law properly under the aegis of the legislature,’ in accordance with the long-standing American Rule adopted by this Court.”)
The majority’s reliance on the “three-part test for determining the constitutionality of a conclusive statutory presumption,” majority op. at 444, to invalidate the statute is unjustified because the majority misunderstands the test and misapplies it in the context presented by this case. The majority’s decision ignores the background of the three-part test. When that background is considered, it becomes abundantly clear that the majority has misapplied the test in this case.
The three-part test was first referred to by this Court in Gallie v. Wainwright, 362 So.2d 936, 943-45 (Fla.1978), where we rejected a claim that statutory and rule provisions limiting the availability of bond pending appeal by criminal defendants established an irrebuttable presumption that transgressed the requirements of due process. The three-part test referred to in Gallie was derived from Weinberger v. Salfi, 422 U.S. 749, 752-53, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), which reversed a lower court’s decision “invalidating [9-month] duration-of-relationship Social Security eligibility requirements for surviving wives and stepchildren of deceased wage earners.” The lower court had held the statutory requirements invalid on the ground that they constituted an irrebutta-ble presumption that violated due process.
In Salfi, the three parts of the test utilized by the majority here were simply elements considered by the Court in determining whether the challenged statutory provisions comported with “standards of legislative-reasonableness.” 422 U.S. at at 776-77, 95 S.Ct. 2457. Salfi relied on “[t]he standard for testing the validity of Congress’' Social' Security classification” set forth in Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960): “ ‘Particularly when we deal with a withholding of a noncontractual'benefit under a social welfare program such as (Social Security), we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in . rational justification.’ ” Salfi, 422 U.S. at 768, 95 S.Ct. 2457. Salfi also cited Richardson v. Belcher, 404 U.S. 78, 84, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), which, in rejecting a due process challenge to a provision of the Social Security Act, said: “‘If.the goals sought are legitimate, and-the classification adopted-is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment.’ ”• Salfi, 422 U.S. at 768-69, 95 S.Ct. 2457.
Accordingly, the Salfi Court’s reasoning was — unlike the majority’s reasoning here — highly deferential- to the legislative judgment underlying the challenged statutory provision:
Under those standards [of legislative reasonableness], the - question raised is not whether a statutory provision pre *452 cisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions. ... Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the.class than nonmembers. The question is [1] whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, [2] could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and [3] that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule. We conclude that the duration-of-relationship test meets this constitutional standard.
Salfi, 422 U.S. at 777, 95 S.Ct. 2457.
The particular elements of the rational basis analysis in Salfi were based on the particular justification advanced by the Social Security Administration for the duration-of-relationship requirement — that is, as a “general precaution against the payment of benefits where the marriage was undertaken to secure benefit rights.” 422 U.S. at 780, 95 S.Ct. 2457. The Court concluded that this concern was undoubtedly “legitimate,” that it was “undoubtedly true that the duration-of-relationship requirement operates to lessen the likelihood of abuse through sham relationships entered in contemplation of imminent death” and that “Congress could rationally have concluded that any imprecision from which [the requirement] might suffer was justified by its ease and certainty of operation.” Id.
It is readily apparent that the framework of the three-part analysis does not fit the context presented by the case on review here. Section 440.34 does not embody a prophylactic requirement akin to the eligibility requirement in Salfi. Section 440.34 thus does not present any question of “inherent imprecision.” Id. at 777, 95 S.Ct. 2457. By definition, the rule of proportionality embodied in the statute precisely and comprehensively protects against fee awards disproportionate to the recovery obtained. The award of such disproportionate fees is the very evil that the Legislature sought to eliminate. In its application of the inapposite three-part test, the majority simply ignores this fundamental point. Beyond that, the majority applies the elements of the test in a manner totally contrary to the manner in which Salfi applied them and totally at odds with the general rule “that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.” Id. at 768, 95 S.Ct. 2457 (citing Nestor, 363 U.S. at 611, 80 S.Ct. 1367).
It should not be ignored that Salfi reversed the lower court’s application of the irrebuttable presumption doctrine and took pains to distinguish and limit earlier cases that had relied on that doctrine to invalidate legislation. 422 U.S. at 771-72, 95 S.Ct. 2457. In doing so, the Court expressed its strong concern that an expansive application of the irrebuttable presumption doctrine — like the application by the lower court — would turn that doctrine “into a virtual engine of destruction for countless legislative judgments which-have heretofore been thought wholly consistent with the Fifth and Fourteenth Amendments to the Constitution.” Id. at 772, 95 S.Ct. 2457. Underlying this concern is the reality that any legislative classification can be characterized as an irrebuttable presumption. The majority here has ap *453 plied a test extracted from Salfi in a manner that flies in the face of the central concern expressed by the Court in Salfi justifying its reversal of the lower court. The line of reasoning adopted by the majority unquestionably has the potential to become a “virtual engine of destruction for countless legislative judgments” previously understood to be constitutional.
Although some of our prior cases have relied on the three-part test derived from Salfi, we have never applied that test to find a statutory provision unconstitutional in circumstances that have any similarity to the circumstances presented here. In Recchi America Inc. v. Hall, which is briefly discussed by the majority, the underlying legislative policy — as expressly stated in the statute — was that no workers’ compensation would be payable for an injury occasioned primarily by the employee’s intoxication. With that legislative policy in view, we upheld the invalidation of a statutory irrebuttable presumption that an employee’s injury was caused primarily by intoxication if the employee was working in a workplace with a drug-free workplace program and tested positive for alcohol or drugs at the time of injury. We concluded that “the conclusive presumption created a high potential for inaccuracy” and emphasized that the injured worker in the case “was injured when a coworker tripped and jabbed a long steel apparatus into the back of his head.” Recchi, 692 So.2d at 154-55.
Leaving aside the question of whether our analysis in Recchi is consistent with Salfi — which we did not mention — Recchi is readily distinguishable from the case now on review. Here, there is no expressly stated legislative policy regarding attorney’s fees that might be implemented through a process of individualized determinations analogous to the expressly stated legislative policy regarding causation that was addressed in Recchi No process of individualized factual determinations could better serve the legislative purpose of establishing proportionality between fee awards and recoveries obtained than does the statutory fee schedule.
Finally, I agree with Justice Polston that the majority “turns this Court’s well-established precedent regarding facial challenges on its head[.]” Dissenting op. at 434 (Polston, J.)
I would answer the rephrased certified question in the negative and approve the decision of the First District.
POLSTON, J., concurs.