Jerry Lee LEWIS, Petitioner,

v.

UNITED STATES PAROLE COMMISSION and Warden, Federal Correctional Institution, Respondents.

Civ. A. No. 7–72225.

United States District Court,
E. D. Michigan, S. D.

April 20, 1978.

**1328**

Charles E. Kirksey, Jr., Harris, Kirksey & Thomas, St. Louis, Mo., for petitioner.

James K. Robinson, U. S. Atty. by Loren G. Keenan, Asst. U. S. Atty., Detroit, Mich., for respondents.

## OPINION

FEIKENS, District Judge.

Petitioner was sentenced by the United States District Court for the Eastern District of Missouri on December 20, 1972, to a

ten-year term of imprisonment under the special provisions of the Narcotic Addict Rehabilitation Act (NARA), 18 U.S.C. § 4251 *et seq.* He was paroled from this sentence on August 17, 1973, with 3,322 days remaining to be served. On September 20, 1976, there occurred an incident that led to a state charge against him for carrying a concealed weapon. This triggered the issuance of a parole violation warrant against him on October 21, 1976, charging: (1) the carrying of a concealed weapon; (2) the unauthorized possession of a firearm; (3)(a) violation of Missouri controlled substance law and (b) resisting arrest; and (4) unauthorized possession of marijuana. This warrant was held in abeyance pending disposition of the local concealed weapon charge. That charge was dropped because of possible Fourth Amendment violations. Petitioner was arrested on the parole violation warrant on February 14, 1977. On February 15, 1977, a preliminary interview was conducted to determine if probable cause for parole violations existed. As a result of the interview, the presiding officer recommended probable cause findings on the weapons charges, but not on the controlled substance and marijuana charges. In a letter dated February 24, 1977, the Regional Commissioner found probable cause for parole violation and scheduled a local revocation hearing.

On March 4, 1977, petitioner appeared before a two-man examiner panel and was represented by retained counsel. Testimony and documents were introduced in his behalf. Two police officers, who were subpoenaed by the Parole Commission, also appeared and testified concerning the events that led to the firearms charges. After this hearing the examiners found by a preponderance of the evidence that petitioner had in fact carried a concealed weapon on September 20, 1976, and this violated his parole. Administrative appeals of this decision were unsuccessful.

On July 19, 1977, the Acting Regional Commissioner reopened petitioner's case to reconsider the reasons for revocation and the application of the reparole guidelines. This hearing was conducted on September 19, 1977 at the Federal Correctional Institution at Milan, Michigan. The suggested range of petitioner's incarceration was revised downward to reflect the fact he was originally sentenced under NARA, but the examiners reaffirmed their previous determination that parole revocation was justified.

In his petition for a writ of habeas corpus, petitioner raises six issues: (1) he alleges numerous denials of due process surrounding the preliminary interview, including insufficient notice of charges, refusal to allow counsel or witnesses to appear, and insufficient statement of reasons for the recommendation; (2) he claims that the testimony of the police officers relied on by the examiners was unreliable, untrustworthy, contradictory, and in direct conflict with clear evidence presented in his behalf; (3) he asserts that the examiners relied upon allegations outside the record of the hearing; (4) that his parole could not be revoked for conduct for which he was not convicted; (5) that since the state charges were dismissed because of Fourth Amendment problems, the evidence cannot be used against him in any proceeding; and (6) that because he was originally sentenced under NARA and had been certified drug-free, he could only be reincarcerated if he became readdicted.

This court has reviewed all of the documents, listened to tape recordings of the March 4 and September 19 parole revocation hearings, conducted an evidentiary hearing, and concludes that the writ must be denied.

I.

■ Petitioner's allegations and the proofs raise doubts concerning due process afforded him at the preliminary interview stage. It does not follow, however, that if petitioner was denied due process at that stage, he is entitled to an order of release now. Whatever may have been the doubtful legality of his incarceration following the preliminary interview, it was rendered lawful by the subsequent revocation hear-

ing if that hearing was properly conducted. *United States v. Companion,* 545 F.2d 308 (2d Cir. 1976); *Weaver v. Markley,* 332 F.2d 34 (7th Cir. 1964); *Jenkins v. United States,* 337 F.Supp. 1368 (D.C.Conn.1972). Petitioner can now only attack the grounds for his present incarceration, and if that is based on a valid determination of parole violation, he is not entitled to the writ. An analogy can be made to the rule that an illegal arrest does not invalidate a properly obtained subsequent conviction. *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

## II.

■ The reliability and trustworthiness of testimony is a matter for the trier of fact—in this case the hearing examiners. The question is not whether this court would have reached a different result if it had heard the testimony as trier of fact. Under 18 U.S.C. § 4214(d), the Board need only determine that a preponderance of the evidence supports a finding of parole violation, and this court cannot thereafter try the question *de novo. Carioscia v. Meisner,* 331 F.Supp. 635 (N.D.Ill.1971); *DeFillo v. Fitzpatrick,* 378 F.2d 85 (2d Cir. 1967). "The test is not whether there was substantial evidence to support the Board's decision revoking his release but whether, as a matter of law, the revocation on its face appears to be without support." *Id.,* at 87. *See also, United States v. Clanton,* 419 F.2d 1304 (5th Cir. 1969). There certainly was testimony at the revocation hearing which, if believed, would establish petitioner's possession of a firearm in violation of his parole. Consequently, the hearing examiners and the Parole Board did not abuse their discretion in this regard.

## III.

■ It appears from the hearing examiners' report that certain allegations of misconduct that were not raised at the hearing were considered by the examiners. Under the holding in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Board may consider evidence that would

not be admissible in an adversary criminal trial, but petitioner was entitled to notice of the existence of this evidence and an opportunity to contest it by cross examination and/or the presentation of contrary evidence. In this case the consideration of improper evidence did not alter the outcome. Since there was ample evidence which, if believed, established a violation of parole, the rumored existence of other criminal conduct did not prejudice petitioner. Using the standard enunciated in Section II, above, there was sufficient evidence to support a finding that petitioner violated his parole.

## IV.

■ The fact that petitioner was not convicted of criminal conduct does not preclude a finding that he violated his parole. There is conduct that is not criminal that may still be in violation of terms of parole. Even if a parolee is acquitted of a weapons charge, parole revocation based on that conduct is proper. Only if "as a matter of law the acquittal on the state charges removed *all* factual support for the parole revocation" can a petitioner use the state disposition to invalidate the parole revocation. *Mack v. McCune,* 551 F.2d 251 (10th Cir. 1977); *United States v. Chambers,* 429 F.2d 410 (3d Cir. 1970); *Fox v. Sanford,* 123 F.2d 334 (5th Cir. 1941).

## V.

■ The question whether or not a search and seizure in violation of the Fourth Amendment calls for the suppression of all evidence so obtained in parole revocation proceedings was addressed in *United States v. Farmer,* 512 F.2d 160 (6th Cir. 1975). The court there stated that the exclusionary rule is inapplicable in such proceedings unless it is necessary to prevent a recurrence of police harassment. *See also, Sperling v. Fitzpatrick,* 426 F.2d 1161 (2d Cir. 1970); *United States v. Brown,* 488 F.2d 94 (5th Cir. 1973). A conflict in testimony existed as to whether or not the police officers who testified concerning petitioner's possession of a firearm knew him or

had contact with him before the incident. In any event, no prior illegal searches or seizures were alleged. Thus, even assuming, *arguendo*, that there was an illegal search and seizure involved in the incident that led to petitioner's parole revocation, the exclusionary rule is inapplicable.

### VI.

Petitioner's final contention appears to be a question of first impression. He maintains that since the purpose of NARA is rehabilitation (18 U.S.C. § 4251), and since the sole criterion for release is certification by the Surgeon General that the prisoner is drug-free (18 U.S.C. § 4254), he cannot be reincarcerated unless he has again become addicted and needs treatment. At first glance this argument appears plausible, but an examination of the law shows that once a NARA prisoner has been paroled upon certification of the Surgeon General, he is to be treated as any other parolee who originally received an indeterminate sentence.

Treatment and rehabilitation are not the *only* purposes of NARA. The original version of § 4251 stated that the purposes of the Act included "confinement and treatment . . . [including] rehabilitative services designed to protect the public and benefit the addict by correcting his antisocial tendencies *and* ending his dependence on addicting drugs . . . ." (emphasis supplied). It should be noted that the Act specifies incarceration as opposed to confinement in a hospital—for at least six months. In *Marshall v. United States*, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974), the Supreme Court described NARA as providing a reduced deterrent, but not without any deterrent effect at all. The Act clearly has a punitive as well as a treatment aspect.

18 U.S.C. § 4254 specifies the procedures for conditional release of NARA prisoners and includes a recognition that the Board may revoke the release. It does *not* state that the release can only be revoked because of further drug use. § 4255 establishes a program of community supervision for NARA parolees and states, "An offender who has been conditionally released shall be under the jurisdiction of the Board *as if on parole under the established rules of the Board* and shall remain, while conditionally released, in the legal custody of the Attorney General." (emphasis supplied). It also authorizes the Board to cause a released offender to be rearrested and to revoke his conditional release. As in the case of § 4254, this section does *not* limit the violations that may lead to arrest and revocation to new drug use. In *Marshall v. United States, supra*, the Supreme Court interpreted this provision as placing the offender on ordinary parole as far as the law is concerned.

Under 18 U.S.C. § 4253, an individual who is determined to be eligible for NARA treatment is to be committed to the custody of the Attorney General for treatment for "an indeterminate period of time not to exceed ten years, but in no event shall it exceed the maximum sentence that could otherwise have been imposed." Title 18 U.S.C. § 4254 then allows for conditional release of an offender, upon the requisite determination, any time after the offender has received six months' treatment. Thereafter, he is legally on parole under the jurisdiction of the Board of Parole, 18 U.S.C. § 4255. 414 U.S. at 429, n. 13, 94 S.Ct. at 707.

Consequently, petitioner may be incarcerated for a *non-drug* related parole violation just as he might if he had not been sentenced under NARA.

### CONCLUSION

For the reasons given above this court concludes that petitioner's current incarceration is the result of a valid parole revocation hearing, and that even though he was originally sentenced under NARA he can properly be held for a non-drug related parole violation.

The application for writ of habeas corpus is denied.

An appropriate order is entered herewith.