Ramon E. **WILLIAMS**, Petitioner,

v.

**U.S. PAROLE COMMISSION,**
Defendant.

**Civ. No. 84–1183.**

United States District Court,
M.D. Pennsylvania.

Aug. 16, 1985.

Ramon E. Williams, pro se.

Robert J. Nolan, Asst. U.S. Atty., Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

We have received a Magistrate's Report in the above-captioned matter. The Magistrate's Report includes a recommendation as to the proper disposition of this case. Petitioner Williams has filed timely exceptions to the contents of the Magistrate's Report. We have considered these exceptions, the Report itself, and the case file in reaching our decision herein.

## BACKGROUND

Petitioner is a federal prisoner under sentence of 18 years imprisonment. That sentence is a result of his conviction in 1974 on bank robbery and related charges. He was paroled from this sentence in October of 1979 on condition that he remain under supervision until 1991. In early September of 1982 he was arrested in Michigan on various state charges which included a weapons violation. This incident provoked revocation of his parole by the United States Parole Commission (hereinafter the Commission). Said revocation gave rise to this *habeas corpus* action pursuant to 28 U.S.C. § 2241. Petitioner is currently incarcerated at U.S.P. Lewisburg as a result of this new criminal behavior which the Commission has rated as category 5 severity under the guidelines in effect in 1983. This rating resulted in a finding by the Commission that Petitioner should serve 72 months in prison with a presumptive parole date of September 2, 1988. Petitioner contends that the Commission violated its own guidelines in reaching this computation. Petitioner takes the position that if the appropriate guidelines had been applied to him he would have had to serve no more than 44 months unless the Commission could state a rationale for taking him beyond the guidelines. This, however, is an over-simplification of Petitioner's case and we shall consider what we perceive to be the five separate aspects of his claim sequentially.

### I

Petitioner's first argument in support of his application is that the Commission should not have found him guilty of possession of a sawed-off shotgun since that charge was dismissed by the prosecuting authorities in Hillsdale, Michigan. Petitioner had originally been charged with said weapons violation, felonious assault, breaking and entering an occupied dwelling with intent to commit a felony, and felonious assault by knife. Petitioner ultimately pleaded no contest to an amended charge of malicious destruction of property and disorderly conduct. He was sentenced to 90 days incarceration and the remaining charges were dismissed. A federal parole violation warrant was executed on December 27, 1982 and Petitioner entered federal custody where he remains.

It is beyond question that the Commission has the authority to find that an individual committed acts in violation of his parole notwithstanding the fact that related criminal charges have been dismissed. This is true provided such finding is supported by a preponderance of the evidence. See 18 U.S.C. § 4214(d). It is for the Commission to decide whether such a preponderance exists. Our task is merely to determine whether the Commission abused its broad discretion by inquiring as to whether there is a rational basis in the record for the Commission's conclusion. See *Zannino v. Arnold*, 531 F.2d 687 at 691 (3d Cir.1976). We find that a rational basis does exist in support of the Commission's conclusion that Petitioner did possess a sawed-off shotgun during the incident which led to his Michigan convictions.

In "Petitioner's Exceptions to the Report of the Magistrate" it is contended that it was irrational for the Commission to rely upon the statements made by one Carolyn Wood[1] on the night of Petitioner's arrest as opposed to the self-contradictory testimony she offered at Petitioner's parole revocation hearing. This Court cannot agree. In his effort to denigrate Miss Wood's initial statement that he had threatened her life with a sawed-off shotgun, Petitioner states " ... the record is clear that Carolyn Wood was hysterical the night of my arrest and did not recover until much later."[2] We cannot, however, fault the Commission's decision to accord greater weight to Miss Wood's initial representations than to her subsequent recantation. On the contrary, we think there is a great likelihood that the truth emerged "in the heat of the moment" rather than after a lapse of time which quite possibly permitted unfathomable influences to change the shape of her testimony. Human experience teaches us that people often speak truthfully when under great stress. We must conclude, then, that considering Miss Wood's testimony and the fact that the investigating officers recovered a sawed-off shotgun at the scene of Petitioner's arrest,[3] it was not irrational for the Commission to find that Petitioner had possessed said weapon. Where conflicting evidence is presented in a parole revocation hearing, the issue of the reliability of such evidence is properly a matter for the Commission. *Lewis v. United States Parole Commission*, 448 F.Supp. 1327 (E.D.Mich. 1978). The Commission is vested with broad discretion with respect to such credibility determinations. *Iuteri v. Nardoza*, 732 F.2d 32, 38 (1984). Thus, we find no fault with the Commission's finding that Petitioner committed the weapons violation alluded to above.

## II

Petitioner's second argument in support of his application is that the Commission's failure to advise him of its finding that he possessed a sawed-off shotgun, until he received a corrected notice of action on October 11, 1984, so prejudiced his defense efforts as to amount to a denial of due process. Here again, this Court disagrees. It is true that the notice of action of October 11, 1984 was the first document which mentioned the weapons violation in the form of a formal charge. However, the record clearly indicates that Petitioner was not prejudiced by this procedural defect since he was earlier advised that the Commission considered a weapons violation to be part and parcel of his new criminal activity.[4] Moreover, he and his attorney addressed this issue at length at his parole revocation hearing. Therefore, the Respondent contends that the corrected notice of action of October 11, 1984 cures any procedural error in this case. We agree based upon our perception that Petitioner received *de facto* notice of the weapons charge and an opportunity to be heard thereon. Due process demands no more.

## III

Petitioner's third claim in support of his application is that the Administrative Hearing Examiner, the Regional Commissioner, and the National Commissioners did not have authority to disagree with the hearing panel's assessment that a preponderance of the evidence did not exist to show that Petitioner had possessed the shotgun. Petitioner bases this claim on the fact that the Commission took no action within the 21 day period prescribed by 18 U.S.C. § 4214(e). The record does verify the fact that some 41 days did elapse between the time of Petitioner's hearing and the time he received notification of the Commission's decision to supersede the recommendation of the hearing panel that Pe-

---

1. Miss Wood was the complainant whose representations led to Petitioner's arrest. Her testimony was corroborated by that of Ruth Place and Kristina Heck.

2. See Docket Item 34 at page 2.

3. See Docket Item 11, Exhibit "A" at page 15.

4. *Id.,* Exhibits "C" and "E".

titioner be reincarcerated and paroled effective September 2, 1983.[5] The Magistrate was of the opinion that since " ... petitioner has not established that he was substantially prejudiced by this procedural error involving *a mere passage of time* ...", that he is entitled to no relief on this aspect of his claim.[6] Petitioner argues that:

> ... The examiners, as the Regional Commissioner's representatives, made a decision which she then had 21 days within which to disagree. By not doing so within that time frame, I contend that she thereby *affirmed* the panel's decision. There appears to be more involved here than a "mere passage of time". It has to do with the finality of the decision. The law and applicable criteria either mean something or they do not. (See Docket Item 34 at page 14).

While we note the ring of logic in Petitioner's argument, we are also aware that the relief this Court can grant in this situation is limited to ordering a new parole hearing for the Petitioner. See *Bush v. Kerr*, 554 F.Supp. 726, 730 (1982), citing *Billiteri v. U.S. Board of Parole*, 541 F.2d 938 (1976). This would seem to be an exercise in futility since we have already ruled that Petitioner's complaint regarding the sufficiency of the evidence relied upon by the Commission to find that he possessed a shotgun is without merit. Accordingly, we will not grant a new hearing on this basis since the outcome of such hearing would not, in this Court's view, be in doubt.

5. *Id.,* Exhibit "H" at page 3.

6. Docket Item 29 at page 12.

7. Where the offense is a parole violation, as in the instant case, the guidelines which should be applied are those in existence when the parole violation was committed. See *Woodmansee v. Miller*, 619 F.Supp. 28 (M.D.Pa.1985 per Chief Judge Nealon).

8. We note that Petitioner's parole decision was made in Indiana. We note, too, that a review of two other decisions of this court indicates that one might possibly conclude that we meant to find that the "Forman Rule" should be applied retroactively. See *Harris v. U.S.P.C.*, Civil Num-

## IV

Petitioner's fourth argument in support of his application is that under the terms of this Court's decision in *U.S. ex rel. Forman v. McCall*, Civil Number 81-0553 (M.D.Pa. September 14, 1984), the Commission should have applied the guidelines in existence in 1982 (when Petitioner committed his latest offense) as opposed to the amended guidelines of 1983. It is generally true that the decision in *Forman* —which was issued after remand by the Third Circuit Court of Appeals and which did make new law—requires the Parole Commission to focus upon the guidelines as they exist at the time an offense is committed as the proper point of departure in determining one's presumptive parole date.[7] However, a subsequent decision in the Middle District, *Leonzi v. U.S. Parole Commission*, Civil Number 84-1684 (M.D. Pa. May 24, 1985 per Judge Rambo), has stated that if *Forman* is applied retroactively to parole decisions made outside this district[8] when an offender is transferred into this district, the result will be deleterious effect on the already strained resources of the Commission. Thus, *Leonzi* holds that *Forman* should be applied only to hearings conducted after September 14, 1984—the date Forman was decided—and to petitions which raised an *ex post facto* issue and were pending on that date. We think the reasoning in *Leonzi* is appropriate and should be followed.

In our legal system, which is based on precedent, judicial decisions gen-

ber 84-0840 (M.D.Pa. December 12, 1984) and *Forsyth v. U.S.P.C.*, Civil Number 85-0220 (M.D.Pa. July 30, 1985). However, the retroactive application question was neither raised by any of the parties nor considered by this court at the time of the decision in those cases. The *Forsyth* matter is back before this Court on procedural grounds and we will, in fact, withdraw our original opinion in that matter and dismiss the *Forsyth* application for relief because of our finding of non-retroactivity of the Forman Rule. The *Harris* case is on appeal on other grounds and we will await the decision of the Appellate Court in that matter.

erally apply retroactively. But such application is not automatic nor—for very good reasons—is it Constitutionally compelled. The basic reason for retroactive application, in most instances, is the protection and enhancement of the truth-finding process—or the trial. If the "new" decision is one which certainly will make the factfinding process more accurate, then the reason for retroactive application is obvious—because it enhances the fundamental concept in American Criminal Justice that one is innocent until proven guilty beyond a reasonable doubt. But if the "new" decision is one that affects procedural matters or, as in this case, one that only *conceivably* could help a defendant in a discretionary area, then the question of its retroactivity must be considered in a different context.

In *Linkletter v. Walker*, 381 U.S. 618; 85 S.Ct. 1731; 14 L.Ed.2d 601 (1965), where the conceptual and jurisprudential theories of retroactive application are reviewed in detail, we are instructed as follows:

> Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.

And, again, in commenting on the administrative difficulties which would be caused by a retrospective application of the exclusionary rule announced in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Court in *Linkletter, supra,* announced:

> Finally, there are interests in the administration of justice and the integrity of the judicial process to consider. To make the rule of *Mapp* retrospective would tax the administration of justice to the utmost. Hearings would have to be held on the excludability of evidence long since destroyed, misplaced or dete-

riorated. If it is excluded, the witnesses available at the time of the original trial will not be available or if located their memory will be dimmed. To thus legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice.

See, also *Tehan v. Shott*, 382 U.S. 406, 86 S.Ct. 459; 15 L.Ed.2d 453 (1966), and *Johnson v. New Jersey*, 384 U.S. 719; 86 S.Ct. 1772; 16 L.Ed.2d 882 (1966).

Following these guidelines the Supreme Court in 1984 in *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), held the criteria to be followed in considering the question of retroactive application of a new decision implicates the following:

(a) The purpose to be served by the new standards.

(b) The extent of the reliance by law enforcement authorities on the old standards.

(c) The effect on the administration of justice of a retroactive application of the new standards.

See, also *Stovall v. Denno*, 388 U.S. 293; 87 S.Ct. 1967; 18 L.Ed.2d 1199 (1967). Applying this reasoning here, we find it would be inappropriate to require retroactive application of the "Forman Rule".[9] The guidelines have been in use and followed by the Parole Commission since 1973 and applied in thousands of instances. There is considerable dispute on the question of the application of the *ex post facto* clause of the United States Constitution to the guidelines, and thus one cannot say the Commission was unreasonable in presuming their validity. Thus, the Commission justifiably relied on their validity in terms of *Solem, supra.*

■ Moreover, the use of the guidelines has no effect on the trial in any given case, and thus no impact on the Defendant's original criminal conviction. In fact, the Commission may not in any instance in-

---

**9.** The petitioner's hearing took place long before September 14, 1984—the date of the *Forman* decision.

crease the sentence beyond the maximum imposed by the sentencing court. It may by its grace or discretion reduce the time presumed to be served.

█ We must inquire, then, whether applying the *"Forman Rule"* retroactively would seriously impede the Commission's work and result in multitudinous hearings which in most instances would not change prior results. The Commission conducts hearings on a regular bi-monthly basis. In a recent 12 month period the Commission conducted 514 initial parole hearings and 102 revocation hearings at U.S.P. Allenwood and U.S.P. Lewisburg alone.[10] Thus, considering the Commission's current caseload, it is plain that retroactive application of the *"Forman Rule"* would, in the terms of *Solem,* supra, have a significant negative impact on the administration of justice. We cannot justify this negative impact in a context where the complaint does not implicate the fundamental issue of a petitioner's innocence or guilt. We, find, therefore, that since this Petitioner's hearing was held out of the Middle District and before September 14, 1984, that he has stated no claim under the rationale of *Forman* as further delineated in *Leonzi.* We emphasize that *Forman* is only to be applied prospectively.

### V

█ Petitioner's fifth argument in support of his application is that the Commission exceeded its authority by placing a detainer against him before his state conviction. This resulted in his incarceration pending disposition of state charges against him. Petitioner contends that *Hopper v. U.S. Parole Commission,* 702 F.2d 842 (9th Cir.1983), supports his position that the lodging of this detainer was impermissible prior to his conviction and that " ... such unauthorized procedure inter-

ferred (sic) with his state pretrial release rights, thereby triggering the sixty-day provision of 18 U.S.C. § 4214(a)(1)(B)." [11] Assuming, *arguendo,* this is so,[12] the *Hopper* Court stated:

> Even if Hopper were denied any statutory rights to a timely parole revocation and probable cause hearings, however, he would not be entitled to habeas relief in this case. The courts grant habeas relief because of delay where the petitioner demonstrates that the delay was unreasonable and prejudicial ... citations ... *Hopper must demonstrate that he was prejudiced by the delay between the time the warrant was issued and the time of his conviction on the state charge* (emphasis ours); at that time Hopper's conviction constituted probable cause for the purposes of a preliminary hearing, and the USPC had express authority to place the detainer. 18 U.S.C. § 4214(b)(1).

Thus, the case Petitioner cites in support of his argument that the USPC illegally placed the detainer against him also requires him to make a showing that he was somehow prejudiced.

Our review of the case file has convinced this Court that he cannot show any prejudicial effect stemming from the delay between the time the detainer was placed and the time he pleaded guilty to the amended information. Therefore, without taking any position as to whether the 9th Circuit or 11th Circuit has rendered the correct statement of law on when these detainers may be placed, we find that Petitioner's claims of prejudice [13] flowing from the fact that he was denied bail due to the federal detainer lodged against him are speculative, unsupportable and wholly inadequate to convince this Court that had Petitioner been free pending trial the result would have been otherwise.

10. See Docket Item 30, *Leonzi* Exhibit at page 5.

11. Docket Item 26 at page 24. It appears the 60 day provision was not adhered to in this case.

12. *Goodman v. Keohane,* 663 F.2d 1044 (11th Cir.1981), holds that the U.S.P.C. *does* have authority to lodge detainers against parolees charged with state offenses prior to their convictions.

13. Docket Item 17 at pages 4 and 5.

In accord with the rationale above, we adopt the Magistrate's Report as our own opinion in this matter and issue the following.

### ORDER

AND NOW, this 16th day of August, 1985, IT IS ORDERED as follows:

1. Petitioner's application for a writ of *habeas corpus* is denied.

2. Judgment is hereby entered in Respondent's favor and the Clerk of Courts is directed to close this case.